## NATIONAL LIFE INSURANCE COMPANY v. MINCH.

*Agency — principal retaining fruits of agent's fraud, liable therefor — Insurance — life policy procured by fraud.*

An innocent principal cannot take an advantage resulting from the fraud of an agent, without rendering himself civilly liable to the injured party. Accordingly, when a husband as agent of his wife, by fraud procured an insurance upon her life, *held*, that money paid upon the policy by the insurance company to the personal representative of the wife after her death, could be recovered back, notwithstanding the wife was innocent of the fraud.

APPEAL by plaintiff from a judgment in favor of defendant, entered upon the verdict of a jury, and also from an order denying a motion for a new trial, made upon the minutes of the court.

The action was brought by the National Life Insurance Company of the United States of America, against Philip Minch, to recover back money paid by the plaintiff to the defendant, as administrator of his wife, Anna C. Minch, deceased, upon a policy of life insurance upon her life, issued in March, 1869, one hundred and two days before her death, which occurred the 8th of July, 1869. It was claimed by plaintiff that the insurance was effected and the amount insured collected through the false and fraudulent representations of the deceased, the defendant and one Potter, a physician, who represented that the deceased was in good health and sound at the time the insurance was effected, whereas at that time she was to their knowledge affected with a cancer, which soon after destroyed her life. The leading features of the case appear in the report of it on appeal from a former trial, in 53 N. Y. 151.

The case and exceptions here presented, contained additional evidence and several rulings of the court in respect to evidence and requests to charge, and exceptions to the charge of the court. The plaintiff asked the court to direct a verdict, which request was refused and the plaintiff excepted.

*James E. Dewey*, for appellant.

*J. M. Carroll*, for respondent.

HARDIN, J. To recover in this action, the plaintiff alleged that a fraud had been perpetrated upon it, in obtaining a policy of

insurance upon the life of Anna C. Minch, deceased, wife of the defendant, who was appointed administrator of her goods, chattels and credits, and as such, received the money upon the policy of insurance. It was held by the Court of Appeals in this case, that to maintain this action, "fraud in obtaining the policy which was unknown to the plaintiff at the time the money was paid or fraudulent representations made to obtain the money which were designed to, and did have the effect of preventing inquiry" by the company must be proved. 53 N. Y. 151.

So, too, it was held that if the money was obtained by the fraud of the agent of the insured, the money cannot be retained, and the party receiving the money relieved from the fraudulent means by which the money was obtained.

Upon the trial very strong and clear evidence was given, tending to establish, beyond reasonable doubt, that the deceased had been afflicted with a cancer for months prior to the application on the 17th of March, 1869, for the policy of insurance.

The evidence was very clear and persuasive that the husband and Dr. Potter, who gave the certificate as an examining physician of the company, also had information of the serious sickness and disease of the insured at the time and before the policy was issued.

To meet the proofs given by the plaintiff of the fraudulent practices made by the deceased, her husband, and the physician, the defendant and the physician, and one or two others were called as witnesses. But a careful perusal of the whole evidence in the case leaves upon the mind a very strong, clear and irresistible conviction that the deceased was aware, at the time the insurance was effected, that she had been and was then suffering from the effects of a disease which was virulent, serious in its character, and that in all probability would soon end her life. She had stated to her neighbors that she had been advised by physicians that she was afflicted with a cancer, and that she could not be relieved by medicine from the disease. Her admissions fix upon her knowledge of the nature and character of the disease, and very satisfactorily establish the fact that she belived she was suffering from a cancer for months prior to the time when she made application to the company for the policy of insurance. She, therefore, made false answers to the questions found in her application for the policy, and these answers were so material as to avoid the policy. *Baker* v. *Home Life Ins. Co.*, 4 N. Y. Sup. 582.

The presumption is very violent that she understood her disease and its nature, and that presumption was not satisfactorily overcome. The deceased was delivered of a child the 27th of November, 1869, and thereafter she began to complain of a lump in her left breast, and expressed apprehension in respect to it to several of her neighbors and to Dr. Alexander Ayers, to whom she stated it had existed for about a year, and she desired him to examine it, and he then pronounced it a schirrous cancer. The husband, according to the testimony of Dr. Alexander Ayers, was, in the fall of 1869, informed that it was a cancer. It also appears by the evidence of Dr. Douglas Ayers that in June, 1868, he was called to see her by her husband, and that after he heard her description of the lump in her breast he examined it, and she told him it had been there about *a year* and a half, and that the pains were sometimes severe, sharp, "darting, cutting pains," and that "after my examination she wished to know what I thought of it; I said to her, my opinion is *you have a cancer*, and that I consider it too late to operate upon." Dr. Douglas Ayers says he saw Minch and his wife on the street two or three months after his examination, and they told him they were going to see Dr. Kingsley, at Rome, a professed cancer doctor.

It also appears that about that time they did go to the city of Rome, saw Dr. Kingsley, and thereafter she remarked to some of her neighbors "that there was no hope," and that she was discouraged. Some of the witnesses heard her say in October, 1868, that "the doctor said it was a cancer and there was no help for it;" "that it was a blood cancer;" "that she had waited too long, and as her veins eat off it would bleed."

There are many facts and circumstances disclosed in respect to her condition prior to March, 1869, and subsequent thereto, strongly pointing to the conclusion that the deceased was aware, knew and believed, prior to the time the insurance was effected, that she was afflicted with a cancer, and that her life was in danger and doubt.

Considerable of the evidence that fixes upon her and her husband knowledge of the malignant character of her disease is not contradicted by any satisfactory evidence in the case.

The preponderance of the evidence is so strong, so clear and convincing, that the motion to set aside the verdict as against the weight of evidence should have been granted. *Smith* v. *Tiffany*, 36 Barb. 23; *Smith* v. *Ætna Life Insurance Co.*, 5 Lans. 545; S. C. affirmed, 49 N. Y. 211.

Judge PECKHAM, in the last case cited, says: "It is the duty of the court to set aside a verdict which is against the clear weight of evidence. Justice would be promoted if the Supreme Court should more frequently exercise its unquestioned right of reviewing verdicts upon the facts." Id. 216. The knowledge of the deceased, and that of her husband of the presence of a malignant and incurable disease, of her previous illness therefrom at the time of effecting the insurance, stand out so clearly and strongly upon the evidence in this case, as to require the court to apply the rule above stated, and set the verdict aside as against the weight and preponderance of the evidence. Therefore, the order denying a motion for a new trial upon the minutes of the court must be reversed, and a new trial ordered, with costs to abide the event.

The learned judge, before whom the cause was tried, delivered the body of his charge to the jury in substantial accordance with the principles of law applicable to the evidence. But some of the requests made by the counsel for the defendant were improperly assented to, and the exception by the plaintiff well taken.

The one requesting the court to charge the jury "that in ascertaining whether Mrs. Minch believed it was a cancer," they were not to take into consideration the subsequent development as to its condition should have been refused. As the evidence discloses that the policy was delivered the 29th of March, 1869, and that she died on the 8th of July, 1869, and was sick so as to require especial attendance from a physician in June, and was shown to be more or less afflicted with disease in April, and the symptoms and circumstances as to her health had been shown in the evidence, and as the defense sought to question the plaintiff's proofs that she was afflicted with a cancer at the time the insurance was effected, it would have been entirely proper for the jury, in ascertaining whether or not she believed it was a cancer, "to take into consideration the subsequent development as to its condition."

Certainly its development the next day after the insurance, the condition of the lump in the breast, the extent of the hole eaten into her breast, and the opinions of the physician predicated on such development and condition were proper for the jury to consider, in ascertaining the condition of the patient when insured, and what therefore must have been, or might reasonably and probably be her belief in respect to her disease. The exception was

therefore well taken to the learned judge's assent to and charge in accordance with the request.

The defendant's counsel requested the court to charge "that if she did not then believe it was a cancer there was no fraud," and it was so charged, and an exception taken by the plaintiff. The request was too broad, and the court should not have assented to it, for that leaves out of view the proof tending to fix a guilty knowledge upon her husband, her agent, who co-operated in obtaining the policy. So too it leaves out of view the proofs tending to show that Dr. Potter had full knowledge of her diseased condition, and acted in complicity with the husband in perpetrating the fraud upon the company.

It was held by the Court of Appeals in this case, that the plaintiff might recover upon evidence direct or circumstantial from which the jury might infer, "that the policy was obtained by fraud for which the insured is chargeable alone or in connection with others." An innocent principal cannot take an advantage resulting from the fraud of an agent without rendering himself civilly liable to the injured party ; so too when a husband acts as agent of his wife, and perpetrates a fraud, the wife, if she keeps the fruits of the fraud, is liable for it, although she was wholly ignorant of the fraud practiced and did not authorize it. *Grover* v. *Spire*, 58 Barb. 349 ; affirmed by Court of Appeals.

The law will impute to her the wrong, as it was done for her benefit and she retained the advantage. In this case she took the policy from the company, and if the husband or Dr. Potter, acting as her agent, perpetrated a fraud upon the company, and by means thereof obtained the policy, then she must take the consequences of the fraud so perpetrated. *Jeffrey* v. *Bigelow*, 13 Wend. 518 ; *Griswold* v. *Haven*, 25 N. Y. 595 ; *Durst* v. *Burton*, 47 id. 174.

This distinction was affirmed by CHURCH, J., upon the former appeal, and he also says : "If the husband obtained the policy by a fraud, acting as the agent of his wife, he occupies the position of claiming to keep the money as her legal representative, which he fraudulently obtained as her agent. He is defending this action upon her title to the policy, which, if procured by fraud, is invalid." 53 N. Y. 149.

As administrator he collected the policy, the company not having discovered the fraud perpetrated, and he cannot withhold the money if, by means of his fraudulent representations and practices, the company was induced to issue the policy and pay the money thereon.

For the errors already alluded to, the conclusion is reached that a new trial must be granted, and it cannot, therefore, be necessary or useful to examine the other exception appearing in the case. The order and judgment should be reversed and a new trial granted, with costs to abide the event.

*Judgment reversed and new trial granted.*