THE TOWNSEND MANUFACTURING COMPANY *vs.* FOSTER &
TOWER.

Where a memorandum, made by a witness in his memorandum book, of what
took place at an interview was made on the evening of the day on which
the interview occurred, and corroborates the evidence given by the witness,
on the trial, it may be received and relied upon for that purpose.

The just administration of the laws requires that where there is a decided pre-
ponderence of evidence upon one side, that should always be followed,
where the witnesses on both sides are equally candid, intelligent and posi-
tive in their statements.

Where the preponderance in the evidence is so decided as to lead very natu-
rally to the conclusion that injustice has been done to a party, by the judg-
ment recovered against him, the judgment, under the well settled rule appli-
cable to such cases, should be set aside, and a new trial directed.

Whenever there is good reason for believing that a referee has mistaken the
import and preponderance of the evidence given on the trial, and it is evi-
dent that injustice has been done, the judgment entered upon his report
should be set aside.

The rule that no evidence is admissible which does not tend to prove or dis-
prove the issue joined, excludes all evidence of collateral facts, or those
which are incapable of affecting any reasonable presumption or inference as
to the principal fact or matter in dispute.

Where the issue to be tried was, whether the defendants agreed to store, insure
and sell the plaintiff's goods for a commission of five per cent; *Held* that
evidence offered, to prove that broker's rates of commissions at the time and
place in question, were from five to seven per cent, without including either
storage or insurance, was properly excluded.

A PPEAL by the defendants from a judgment recovered
upon a referee's report.

*F. E. Cornwell*, for the appellants.

*A. P. Nichols*, for the respondent.

*By the Court*, DANIELS, P. J.   The right of the plaintiff
to recover in this action depended upon whether the de-
fendants had agreed to keep the property insured, which
the plaintiff consigned to them for sale.  And the dispo-
sition of this question depended solely upon whether the

relation given of the contract made between the parties, by the witness who testified to it on the part of the plaintiff, was entitled to credit, after the positive contradiction of it by the defendants' evidence. These three persons are the only surviving parties who were present when the contract was made, and the only ones who can give positive evidence of its terms. Other evidence was given tending in some degree to corroborate, as well as to discredit the evidence of the plaintiff's witness, and some tending to corroborate the evidence given by the defendants. Before the time when it was claimed on the part of the plaintiff the agreement in controversy was made, the business to which, upon its incorporation, it succeeded was carried on by Townsend & Co. And that firm had a portion of its manufactures in the hands of Durrie & Rusher, in the city of New York, for sale. This property the corporation contemplated withdrawing from that firm, and placing it in the hands of the defendants for sale by them, together with such additional portion of the manufactures of the plaintiffs as should be consigned to the city of New York for sale. For the purpose of accomplishing this result, Mr. Townsend, since deceased, with the managing director of the plaintiffs, called upon the defendants at their office in the city of New York, the last of January, 1864, and then the agreement relating to this business was entered into. On that occasion it was agreed that the defendants should receive the property of Townsend & Co. and of the plaintiffs which Durrie & Rusher then had on hand, and such other manufactured articles of the same general description as the plaintiffs should afterwards consign to them, and should sell them for the plaintiffs for a commission of five per cent. A collateral dispute arose upon the trial concerning a stipulation forming part of the agreement, that it should be reduced to writing. But it was no farther important than the incidental bearing it had upon the credit of the witnesses,

whose evidence related to the terms of the agreement itself. The managing director of the plaintiffs testifying that it was to have been reduced to writing by the defendants, while they each as positively stated that it was to have been done by him and afterwards forwarded to them for execution. In this particular the defendants were corroborated to some extent by the witness Cavanagh, who testified that as Karr, the plaintiffs' managing agent, was leaving the defendants' store, Mr. Tower asked him to send copies of the agreement to be signed. With this exception there was no substantial disagreement upon the terms of the contract, except upon that relating to the obligation of the defendants to keep the plaintiffs' property insured. This presented the substantial controversy in the action.

Upon this subject the plaintiffs' managing director testified positively that such an agreement had been made between Mr. Townsend, acting for the plaintiffs, with the defendants; and that it was afterwards repeated over to him by the defendant Foster; and that he assented to it on behalf of the plaintiffs. This witness was corroborated, to some extent, in this statement by the memorandum which he testified he made in his memorandum book in the evening of the day on which this interview took place. Although the memorandum is begun in a tense that strictly relates to something to be done in future, yet the following portion of it quite clearly shows that it was intended to record a transaction that had at that time been accomplished. To some extent, this memorandum corroborated the evidence given by the witness, and it was properly received and relied upon for that purpose by the referee. (*Halsey* v. *Sinsebaugh*, 15 N. Y. Rep. 485, 488.) This witness had been examined on a previous hearing in this action before the same referee. And on that occasion he testified that he made the agreement with the defendants concerning the insurance and sale of this property, making no allusion to Mr. Townsend as having previously had any thing

Townsend Manufacturing Company *v.* Foster.

whatever to do with it. The explanation which the witness gave of this discrepancy was that if he did not say any thing about Mr. Townsend, it was because he was not asked. This was not a very satisfactory reason for his omission to state accurately what had transpired when the contract was made. But the discrepancy itself was not of so material a character as to produce the conclusion that it exhibited an intention on the part of the witness to deviate from the substantial truth in his relation of the interview. Though not literally, it was substantially true, because he did in reality make the agreement on the part of the plaintiffs, by accepting and assenting to the terms previously settled upon between the defendant Foster and Mr. Townsend. There is clearly nothing in this circumstance alone which could reasonably justify the conclusion that the witness intended to allow himself to deviate from what was the substantial truth of the transaction. And if he did not, he should not be discredited, because he did not select the terms he employed to express his meaning with the utmost care and accuracy. To some extent, it would tend to weaken the reliance his evidence would otherwise have produced. But how far it should be allowed to operate in this respect was more particularly a matter for the consideration of the referee in whose presence the witness was examined.

The important evidence in the case affecting the statements of this witness, is that which was given by the defendants themselves, corroborated as they were, in part, by the witness James Cavanagh. For the plaintiffs' witnesses testified that they were both present when the interview took place in which it was claimed the agreement was made, that the defendants were to keep the plaintiffs' property insured. There is no reason for supposing that the defendants did not hear, and fully understand what was said on that occasion. And they both testify clearly and positively that no agreement was made

that they were to keep this property insured. It is true, that these defendants were giving evidence for the protection of their own interests. But in that respect they only differed from the plaintiffs' witness in the extent of that interest. For being the plaintiffs' managing director, it may reasonably be supposed that he owned a portion of the stock of the corporation, which would be enhanced or diminished in value by the result of the trial on which his evidence was given. No satisfactory reason can be gathered from the evidence as it is contained in the case submitted on this appeal, justifying the referee in rejecting the defendants' statements, of the nature of the agreement made, and relying upon that given by the plaintiffs' witness. On the contrary, the preponderance of the evidence on this subject was decidedly with the defendants. And the just administration of the laws requires that that should always be followed where the witnesses are equally candid, intelligent and positive in their statements. There is not only greater certainty secured in that manner, that the controversy will be accurately disposed of, but beyond that, it is the only practical way in which the respect and confidence of the public in the administration of the laws can be surely maintained and preserved. It is not intended to be affirmed that these principles have been intentionally disregarded in the disposition which the learned referee made of this case. But the difficulty upon this part of it is that there is nothing contained in the printed case showing their observance.

The preponderance in the evidence is so decided as to lead very naturally to the conclusion that injustice has been done to the defendants by the judgment recovered against them. And where that is the case, under the well settled authority applicable to its government, the judgment should be set aside, and a new trial directed. In the case of *Adsit* v. *Wilson,* (7 *How. Pr.* 64, 66,) it was held by this court "to be the legal duty of the courts to

Townsend Manufacturing Company *v.* Foster.

see that issues of fact in their courts, are fully and fairly tried ; and in courts of record, if the verdict or finding of the facts is so clearly without evidence, or against the evidence, as to satisfy the court that there is strong probable ground to believe that the merits have not been fully and fairly discussed, or that the jury have given their verdict under a misconception of the law, or under any improper extraneous influence, and that great injustice has been done, the court will set aside the verdict, not for the purpose of assuming the trial of the facts themselves, but for the purpose of granting a new trial by another jury, or by other triors, under circumstances more favorable to a just result." This principle is sanctioned by *Jackson* v. *Sternbergh*, (1 *Caines,* 162 ;) *Conrad* v. *Williams,* (6 *Hill,* 444, 451 ;) *Boyd* v. *Colt,* (20 *How. Pr.* 384;) and *Hartman* v. *Proudfit,* (6 *Bosw.* 191.) There is good reason for believing that the referee in this case mistook the import of the evidence given on the trial, and when that appears to have been the case, and it is evident that injustice has been done, the judgment recovered upon his report should be set aside.

Several exceptions were taken to the exclusion of evidence which was offered on the part of the defendants on the trial. There is but one of these which presents any question worthy of consideration. And that was taken to the exclusion of the evidence offered to prove that broker's rates of commissions for merely selling goods in New York, in 1864, were from five to seven per cent, without including either storage or insurance. Even if that were true, it would have no effect whatever upon the solution of the question, whether, upon the occasion in controversy, the defendants agreed to store, insure and sell the plaintiffs' goods for a commission of five per cent. Many reasons may have existed in this case, inducing the defendants to deviate from that rate. The evidence offered had no necessary tendency to prove that they did not deviate from

it in this instance. And for that reason it was irrelevant. "The business of a trial is to ascertain the truth of the allegations put in issue," and "no evidence is admissible which does not tend to prove or disprove the issue joined." (*Starkie on Evidence, part* 3, 387. 1 *Greenleaf's Evidence,* § 51, a, § 52. 1 *Phillips' Evidence,* 3d ed. 460.) And "this rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference, as to the principal fact or matter in dispute." (*See also Jackson* v. *Smith,* 7 *Cowen,* 717.)

No legal errors were committed during the progress of the trial. But by the final disposition of the cause, as has been already shown, the learned referee mistook the import and preponderance of the evidence given upon the trial of the cause. And for that reason alone, the judgment should be reversed, and a new trial ordered, with costs to abide the event.

[ERIE GENERAL TERM, February 10, 1868. *Daniels, Marvin* and *Davis,* Justices.]