WILLIAM CANADAY, Respondent, v. FRANKLIN KRUM, Appellant.

In an action to recover the amount of a check drawn by C., plaintiff's assignor, to the order of defendant, and alleged to have been delivered to the latter to be used in purchasing a draft for the drawee, the defendant averred in his answer that the check was intended as a payment in part of a claim which C. "morally owed" the defendant, growing out of a fraud perpetrated by C. in inducing defendant to take a fraudulent note; the alleged facts in reference thereto being set forth in the answer, which also averred that defendant settled the claim with C. on his promise that he would at some time pay the loss. On the trial, after L., as a witness for plaintiff, had testified that the check was given to purchase a draft, defendant's counsel sought to show by him, on cross-examination, the facts of the fraud set forth in the answer; this was objected to and the evidence excluded. After defendant, as a witness in his own behalf, had testified that the check was given as a payment upon the claim arising out of the fraudulent note, his counsel offered to prove by him the transaction in regard to said note substantially as alleged in the answer. This was objected to and excluded. Before the court ruled upon the offer it was conceded that a release under seal, which was produced, was executed by defendant with full knowledge of the facts; the release recited that in consideration of the agreement of the other parties to indemnify defendant from the debts of a firm named during the time he was a member he released C. from all demands "by way of checks, notes or otherwise." *Held,* that the evidence offered was properly rejected; that evidence of the details of the fraud could not legitimately tend to confirm defendant's version.

The evidence upon the cross-examination of C. was also offered, for the purpose of discrediting him. *Held,* that the rejection thereof for that purpose was in the discretion of the court, and so was not error.

(Argued November 11, 1880; decided December 1, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 28, 1879, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover the amount of a check drawn by Lloyd Canaday, plaintiff's assignor, payable to the order of defendant, which the complaint alleged was delivered to him to be· used to purchase a draft to be sent to the drawee, instead whereof defendant drew and retained the money. The substance of the answer and the material facts appear in the opinion.

*Hobart Krum* for appellant. If Lloyd Canaday paid the money to defendant on account of his moral obligation by reason of the bogus·note, it was a voluntary payment and cannot be recovered back. (*Flower* v. *Lance,* 59 N. Y. 603; *Railroad Co.* v. *Marsh,* 12 id. 309; *Silliman* v. *Wing,* 7 Hill, 159; *Quincy* v. *White,* 63 N. Y. 370; *Sup'rs of Delaware Co.* v. *Foote,* 9 Hun, 527, 531; *Stafford* v. *Bacon,* 1 .Hill, 530.) If the debt was discharged by operation of law, or there was a legal obstacle to its recovery, the moral obligation ·will support a promise. (*Bently* v. *Morse,* 14 Johns. 468; *Bridge* v. *Johnson,* 5 Wend. 349; *Goulding* v. *Davidson,* 26 N. Y. 614; *Early* v. *Mahon,* 19 Johns. 147; *Stearns* v. *Tappan,* 5 Duer, 294; *Orans* v. *Hunter,* 28 N. Y. 394.)

*S. L. Mayham* for respondent. The parties having reduced their agreement to writing, under seal, that is the best evidence, and, in the absence of fraud or mistake, the only evidence of what they intended. (1 Greenleaf on Evidence, §§ 86, 87; *Lament* v. *Hudson River Ins. Co.,* 17 N. Y. 199; *Erwin* v. *Saunders,* 1 Cow. 249.) The legal effect of this writing

being a release, that legal character or effect can no more be changed by parol than can its express terms. (*Thompson* v. *Ketcham*, 8 Johns. 190; *Pattison* v. *Hull*, 9 Cow. 747; *Le Farge* v. *Rickert*, 5 Wend. 187.) Parol proofs of the acts of parties, under a writing clear and unambiguous in its terms, cannot be received to control the construction of the writing. (*Norton* v. *Woodruff*, 2 N. Y. 153; *Giles* v. *Comstock*, 4 id. 270; *Clark* v. *Baird*, 9 id. 183.) A mere moral or conscientious obligation, unconnected with a prior unextinguished legal or equitable claim, is not enough to support a promise. (*Ehle* v. *Judson*, 24 Wend. 99; *Smith* v. *Ware*, 13 Johns. 257; *Goulding* v. *Davidson*, 26 N. Y. 613.) In the admission or rejection of immaterial questions upon collateral matter on the cross-examination of a witness, the judge may exercise a sound discretion, and such exercise of discretion is not the subject of review on appeal. (*Great West. Turnpike* v. *Loomis*, 32 N. Y. 127; *Ward* v. *The People*, 3 Hill, 395; 6 id. 144–146; *La Beau* v. *The People*, 34 N. Y. 223.) The offer to prove a parol contemporaneous agreement at the time of the execution of the written release in conflict with its terms, was properly denied. (1 Greenleaf on Evidence, § 275; *Bush* v. *Tully*, 49 Barb. 599.)

ANDREWS, J. The issue formed by the pleadings was whether the check of Lloyd Canaday, plaintiff's assignor, dated December 14, 1876, for $2,000, drawn on the Schoharie County Bank, to the order of the defendant, was delivered to him to be used in purchasing a draft to be sent to the drawer, or whether, as the defendant claimed in his answer, it was intended as a payment in part of a claim of $5,000, which said Canaday "morally owed" the defendant, growing out of facts alleged therein. The facts so alleged were in substance, that in February, 1876, the Schoharie County Bank held a note of Lloyd Canaday, who was then insolvent, for $5,000, indorsed by his brother, George Canaday, a man of pecuniary responsibility, which the defendant, as president of the bank, at the request of Lloyd Canaday, delivered to him before it

became due, to take to his brother, upon his agreement to procure his brother's indorsement of another note of the same amount in renewal, and deliver it to the bank in place of the note so given up; that the plaintiff's assignor, with the intent to defraud the bank, made a note for the same amount, and procured it to be indorsed by another person of the same name as his brother, a man without property and insolvent, and imposed this note upon the bank in renewal of the former one, the bank supposing that the indorser was the maker's brother, and the debt was thereby lost; that defendant made good the loss to the bank, and afterward settled with Canaday the claim against him arising out of this transaction, without in fact realizing any thing therefrom but upon his promise that he would at some time pay or arrange the loss. The answer further alleges that afterward Lloyd Canaday requested the defendant to procure the bank to discount for him notes to the amount of $6,000, which he finally agreed to do upon his promise to pay out of the proceeds $2,000 upon the claim on the " bogus " note, so called, and that the defendant procured the discount, and Canaday gave him the check in question in payment of that sum, pursuant to the agreement.

Lloyd Canaday and defendant were the only witnesses on the trial. Canaday's examination in chief was confined to the proof of the agreement upon which the check was given, as alleged by him. The defendant's counsel, on the cross-examination of Canaday, sought to show by him the facts of the fraud set up in the answer, but upon the objection of the plaintiff the evidence was excluded. Upon the conclusion of Canaday's examination the plaintiff rested, and the defendant was sworn as a witness in his own behalf. He testified (in direct contradiction of Canaday) that the check was given as a payment on the claim arising out of the fraudulent note. He was fully examined in respect to the alleged agreement between him and Canaday made prior to the discount of the notes for $6,000, that he should be paid $2,000 out of the proceeds upon the claim mentioned. The defendant's counsel then offered to

prove by him the transaction " in regard to the $5,000 bogus note, for the purpose of having the jury say which of the two stories is the reasonable one," stating in detail the facts which he offered to prove in substance as they are alleged in the answer. The plaintiff's counsel objected to the proposed evidence as incompetent and inadmissible, and upon the further ground that it appeared from the opening of defendant's counsel and also from the pleadings, that the note transaction was settled by a release under seal. The record states that before the court ruled upon the offer, it was conceded that the release produced was executed at its date, and that at the time it was executed the parties "had full knowledge of the facts and circumstances connected with what has been called the bogus note transaction." The release was an instrument under seal, dated February 18, 1876, executed by the defendant and by Lloyd Canaday and others, whereby among other things the defendant in consideration (as the instrument recites) of the agreement of the other parties contained therein to indemnify the defendant against the debts and liabilities of the firm of " Lloyd Canaday " of which the defendant was a member, released Lloyd Canaday from all demands against him " by way of checks, notes or otherwise," held by the defendant or the bank. The court sustained the objection, and rejected the proposed evidence.

The correctness of the ruling presents the only question of difficulty on this appeal.

I am of opinion that the evidence offered was properly rejected. The facts relating to the fraud committed by Lloyd Canaday were not admissible in evidence, unless they were relevant to the issue, or to some fact which was itself relevant to the issue. The fraud in respect to the former note was not a fact in issue. The issue was whether the check was intrusted to the defendant as bailee of the drawer, or was transferred to him in part satisfaction of a moral obligation. If the defense had been that the check was made and delivered in payment, in whole or in part, of a legal debt owing by the

drawer to the defendant, it would doubtless have been competent for the defendant to have proved that there was a debt which the drawer was obligated to pay. The fact of the existence of a debt in the case supposed would be so related to the fact of payment as to be relevant to the issue.

So, also, in answer to a claim that money sought to be recovered was given in payment of a debt, it would be competent for the plaintiff to disprove the existence of a debt, for if there was no debt to be paid this fact would negative, by the strongest inference, the alleged payment set up by the defendant. It would be so contrary to common experience, that a person would part with his property, in payment, when there was no debt or liability to be paid or discharged, that the proof of the latter fact would afford the most satisfactory presumption that the transaction, whatever it was, was not a payment.

In this case there was direct proof by both parties of what the actual transaction was when the check was given, and the testimony of plaintiff's assignor and defendant was irreconcilably conflicting. It was a case where the court and jury were entitled to all the light which could be furnished by circumstances legitimately bearing upon the point in controversy. Would evidence, showing in detail the circumstances of the gross fraud perpetrated by the plaintiff's assignor upon the defendant nine months before, legitimately tend to confirm the defendant's version of the agreement under which the check was given? It is to be observed that Lloyd Canaday did not in his evidence deny the original fraud. The transaction was referred to by the defendant in different parts of his testimony as the " bogus note " transaction, and the existence of a moral obligation on the part of Lloyd Canaday, to indemnify him, was asserted by the defendant (as both testified), in the negotiation in respect to the discount, shortly before the check was given.

The plaintiff's assignor, on his cross-examination by the defendant's counsel, stated that he told the defendant that he did not think he ought to pay any part of the $5,000, " because in the settlement there had been a balance due me," referring to the release. But this evidence was called out by the defendant,

and furnished no reason for permitting him to go into the evidence of the details of the original transaction, if on general grounds the evidence was irrelevant. It is quite probable that if the defendant had been permitted to go into the details of the fraud, it would have had a material influence with the jury. They might have been quite ready to punish the party who committed the fraud and, in their natural indignation, would have been very likely to have lost sight of the only material inquiry, viz. : what was the agreement upon which the check was received by the defendant ; was it given to and taken by him as bailee, or in discharge, or part satisfaction of a moral duty to indemnify the defendant? Upon this question I do not think evidence of the details of the fraud could have furnished any light. There is no natural inference that a man who has committed a fraud will endeavor to repair it, in the absence of any legal obligation to do so. Some men might do it, and others would not. At all events then there can I think be no legitimate presumption of the existence of the particular fact of payment from the antecedent fact that there was a strong moral obligation on the part of the other party to make reparation for his gross wrong, by payment of the resulting loss. Take the case before supposed of an admitted debt. Would it be competent upon the issue, whether certain money was received in payment of the debt, for the party maintaining that issue to show, as bearing upon the contested fact, that the debt was especially sacred, and one which the other party was bound to pay by the strongest considerations of honor and duty, as well as by the obligation of law ? I think not, and for the reason that no safe inference could be drawn from such premises, and that the introduction of such an issue would tend to mislead and divert the attention of the jury from the real question in the case.

The following authorities bear with more or less directness upon the question here considered. (1 Greenl. Ev., § 52; *Elliott* v. *Gibbons*, 31 N. Y. 67; *Daby* v. *Ericsson*, 45 id. 786; *Baird* v. *Gillett*, 47 id. 186; *Green* v. *Disbrow*, 56 id.

334; *Platner* v. *Platner*, 78 id. 90; *Townsend Manfg. Co.*
v. *Foster*, 51 Barb. 346; *Green* v. *Rochester Iron Manfg.
Co.*, 1 N. Y. Sup. Ct. [T. & C.] 5.) The claim that
the same proof offered on the cross-examination of Lloyd
Canaday, to discredit him, was erroneously excluded, is
answered by the cases of *G. W. Turnpike Co.* v. *Lewis* (32
N. Y. 127), *Le Beau* v. *The People* (34 id. 223).

The judgment should be affirmed.

All concur, except RAPALLO and FINCH, JJ., dissenting.
Judgment affirmed.