MULLIGAN *v.* NEW YORK CENT. & H. R. R. Co.

*(Supreme Court, General Term, Fifth Department.* October 28, 1890.)

RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.

Deceased was killed by a train while attempting to drive over a railroad crossing with which he was perfectly familiar, and at a time when he had reason to know that the train was due. The flagman was at his post, not only giving the usual signals of the approach of the train, but shouting a warning to deceased himself. The track on which the train was approaching was in sight for a distance long enough to have enabled the deceased to avoid the collision. An ice-cart had been stopped by its driver in front of the crossing to await the passage of the train. The horse of the deceased was entirely within his control, but he drove at a trot, and without slack-ing his speed, past the ice-cart and over an intervening track, onto the track where the collision occurred. *Held,* that the evidence was insufficient to establish affirmatively the fact that deceased was not guilty of contributory negligence, and that a verdict in favor of his administratrix should be set aside, and a new trial granted. CORLETT, J., dissenting.

Appeal from circuit court, Ontario county.

Action by Mary Mulligan, administratrix, etc., of James Mulligan, de-
ceased, against the New York Central & Hudson River Railroad Company,
for the alleged negligent killing of her intestate. There was a verdict in
plaintiff's favor. From a judgment thereon, and an order denying a motion
for a new trial on the minutes, defendant appeals.

Argued before DWIGHT, P. J., and CORLETT and CHILDS, JJ.

*J. H. Camp,* for appellant. *John Gillette,* for respondent.

DWIGHT, P. J. After a very careful examination of the evidence in this
case, aided by the elaborate briefs of counsel furnished on two arguments of
the appeal, we are impressed with the conviction that the evidence bearing
upon the question of the degree of care exercised by the plaintiff's intestate,
for his own safety, in the attempt to cross the tracks of the defendant rail-
road, on the occasion of the casualty which was the subject of this inquiry,
was not such as to warrant a verdict in favor of the plaintiff. The rules of
law which govern this conclusion are perfectly well settled, and are not open
to discussion. The burden was upon the plaintiff to establish, affirmatively,
the fact that the deceased exercised all due and reasonable care to avoid the
collision which resulted in his death. That this fact may, and in most cases of
this character can, only be established by reasonable inference from the attend-
ing circumstances proved in the case is undoubtedly true; and equally so that
where such inference may be legitimately drawn from the evidence it is the
province of the jury to say so by their verdict. But the rules thus stated imply

that the jury is not necessarily, in every case, even of conflicting evidence, the final arbiter of the question of fact.   The power and the duty of the court to set aside verdicts which are clearly contrary to the just preponderance of the evidence is one recognized and enjoined by all the authorities; and this not alone in cases where the motion for nonsuit is improperly denied.   In the case of *Colt* v. *Railroad Co.*, 49 N. Y. 671, in which the opinion is not reported, the only question seems to have been whether a nonsuit should have been granted, and the court, if correctly reported in the head-note, said, in an opinion by ALLEN, J., that it is not enough to justify a nonsuit that the court might, in the exercise of its discretion, grant a new trial, but that the evidence may be sufficient in law to sustain a verdict, although so greatly against the apparent weight of evidence as to justify the granting of a new trial.   In the case of *Adsit* v. *Wilson*, 7 How. Pr. 64, 66, the general term of this court, in the eighth district, held, in language quoted and approved by DANIELS, J., in *Manufacturing Co.* v. *Foster*, 51 Barb. 346, 350: "It is the legal duty of the courts to see that issues of fact in their courts are fully and fairly tried; and in courts of record, if the verdict or findings of fact is so clearly without evidence, or against evidence, as to satisfy the court that there is strong probable ground to believe that the merits have not been fully and fairly discussed, or that the jury have given their verdict under a misconception of the law, or under any improper extraneous influence, and that great injustice has been done, the court will set aside the verdict, not for the purpose of assuming the trial of the facts themselves, but for the purpose of granting a new trial by another jury, or by other triors; under circumstances more favorable to a just result."   And in the latter case this principle was held to be sanctioned in several cases cited.   In the case of *Smith* v. *Insurance Co.*, 49 N. Y. 211, 216, the court say: "The action of the supreme court was plainly right.   It is their duty to set aside a verdict which is against the clear weight of evidence."   And Judge PECKHAM significantly adds: "Justice would be promoted if the supreme court should more frequently exercise its unquestioned right of reviewing verdicts upon the facts." In the case before us we find an absence of circumstances from which the inference can be legitimately or reasonably drawn that the deceased was exercising due and reasonable care for his own safety when he drove upon the track in front of the approaching train.   On the contrary, we think the clear import of the evidence is that his conduct was the result either of complete inattention to the requirements of the situation, or of a miscalculation of his chances of making the crossing in advance of the train.   He was perfectly familiar with the crossing, and had reason to know that the train was due. He was in the habit of crossing the track at about the same time nearly every day in the year.   The flagman, who had been maintained by the defendant at that crossing for many years, was at his post, not only giving the ordinary signals of the approach of the train, but shouting a warning to the deceased himself.   An ice-cart, which had been stopped by its driver to await the passage of the train, stood at a safe distance from the track, and not so near as to intercept the view of the deceased of the approaching train at a point where he might safely have stopped or turned aside to avoid the collision.   The street upon which he drove was the main street in Canandaigua, and was level from side to side, and more than six rods wide between the curb-stones.   His horse was aged and gentle, and entirely in his control; but he drove at a trot, and without slacking his speed, past the ice-cart, and over an intervening track, onto the track where the collision occurred.   Without attempting to recount all the circumstances of the case in detail, it is sufficient to say that so far from establishing affirmatively the fact of the exercise of due and reasonable care for his own safety on the part of the deceased, they strongly tend to establish the absence of such care.   Such being the case, even if it were to be conceded that the motion for a nonsuit was properly denied, the motion for

a new trial should have been granted; and for error in that respect the judgment should be reversed and a new trial granted, with costs to abide the event.

CHILDS, J., concurs.

CORLETT, J., (*dissenting.*) On the 23d day of January, 1888, James Mulligan, a resident of the village of Canandaigua, was riding north, on Main street, in that village, in a cutter drawn by one horse. Martha Bennett, a girl about 14 years of age, rode with him. Main street runs nearly north and south, is eight rods wide, and has a street railroad in its center, the traveled part being about two rods wide on each side. There is a paved gutter on each side of the street, also a sidewalk of the width of 16 feet. There are two railroads which cross this highway, the defendant's and one known as the "Peanut," going to Batavia, which, at the point of crossing, is south of the defendant's road, the nearest rails of the two roads being about 10 feet apart. At the point of crossing the roads run parallel with each other. In crossing the street to the west there is a slight curve to the north, which increases as the road proceeds westerly. The highway ascends slightly to the north. The roads run parallel until after crossing the iron bridge, which is 164 feet long, and 200 feet from the west line of Main street. The defendant owns a switch-house about 3 feet west of the line of Main street, about 8 feet square and 10 feet high. There is also a large brick building, known as the "Town House," west of Main street and north of the defendant's tracks. Its front end is 30 feet from the tracks, which so curve to the north, going west in the direction of the iron bridge, that the rear end of the building is within 8 feet of the track. In approaching the tracks from the south this building somewhat obscures the view of the track west of it to the iron bridge. A number of dwelling-houses obstruct a clear view of the track west of that point. As the deceased approached the railroad tracks about 5 o'clock P. M., there was a locomotive and two passenger-cars on the Batavia track, just west of Main street, so that the rear end was as far west of Main street as the west side of the switch-house. The effect was to obstruct the view of the deceased, as the evidence tends to show, until he got very near the Batavia track. There was also a large ice-wagon, drawn by two horses, standing near the Batavia track, and eight or ten feet south of it. The evidence tends to show that the Batavia engine was making considerable noise, blowing off steam, which passed over Main street, thus somewhat obscuring the view. It also appears that when the flagman notified the ice-man of the approach of the train, his wagon was between him and the cutter. At the time above stated, the defendant's train, known as the "New York Express," crossed the highway, going eastward, where it struck and killed the deceased. The above was the situation at the time of the accident. This action is brought by the widow of the deceased, under the statute, to recover damages for the benefit of the next of kin of her husband. The action was tried in February, 1889, before Justice MACOMBER and a jury. The trial resulted in a verdict of $5,000 for the plaintiff. At the close of the plaintiff's evidence, the defendant moved for a nonsuit, claiming that no negligence was proved on its part; also that the plaintiff failed to show want of negligence on the part of the deceased which contributed to the injury. The motion was denied. The defendant's central contention is confined to the last proposition. There was evidence tending to show negligence on the part of the defendant in omitting either to blow the whistle or ring the bell up to the time of the accident; also that the train was running at a high rate of speed. There were other circumstances proved tending to show negligence. The trial justice was undoubtedly right in submitting that question to the jury. *Thompson* v. *Railroad Co.,* 110 N. Y. 636, 17 N. E. Rep. 690.

· As to the question of contributory negligence, the case is nearer the border. The defendant claims that the deceased, who was familiar with the crossing, deliberately drove in front of the approaching train, neither looking, listening, nor heeding the voice or warning of the flagman. The evidence on the part of the plaintiff tends to show that he looked carefully, and was upon the track before he saw or knew of the approach of the train. The obstructions surrounding the place of the accident are also urged in support of the plaintiff's contention. It is claimed that the deceased did not see or hear the flagman until it was too late to save himself. Martha Bennett, who rode with him, testified, among other things: "I saw him look both ways. I did not see any train coming. My hearing and eye-sight is good. I did not hear any bell or whistle of the train. I did not see anything of Kinsilla, the flagman." At another place she testified: "Didn't hear Kinsilla say anything. Did not hear any noises as we approached the crossing." She also testified that she did not notice that the deceased heard any noise, or that his attention was attracted by any. The ice-man, Robert Calvert, testified, among other things, speaking of the deceased: "His horses must have been on the Central track at the time the flagman shouted." It is true that at another place this witness testified that he and Kinsilla were face to face, and shouted, but that, notwithstanding his efforts, the deceased drove right upon the Peanut track. Walmsley testified that he did not see any flagman, and inquired where he was. Parkhurst testified, among other things, that the deceased could not see the flagman until he passed the ice-team, and that, although he (the witness) was near, he did not hear the flagman shout. Some other circumstances appear which the plaintiff claims strengthen her testimony on this branch of the case. Where there is any evidence direct or inferential of care or caution on the part of the person injured, the question as to contributory negligence is for the jury. *Greany* v. *Railroad Co.*, 101 N. Y. 419, 5 N. E. Rep. 425; *Weil* v. *Railroad Co.*, 119 N. Y. 147–153, 23 N. E. Rep. 487; *Birkett* v. *Ice Co.*, 110 N. Y. 506, 18 N. E. Rep. 108; *Kunz* v. *City of Troy*, 104 N. Y. 344, 10 N. E. Rep. 442; *Stackus* v. *Railroad Co.*, 79 N. Y. 464. In *Parsons* v. *Railroad Co.*, 113 N. Y. 355–364, 21 N. E. Rep. 145, the judge delivering the opinion says: "This rule must, in all cases except those marked by gross and inexcusable negligence, render the question involved one of fact for the jury." It is true that there was evidence given by the defendant tending to weaken or overthrow the force and cogency of that on behalf of the plaintiff; but, applying the doctrine of the above cases to the one at bar, it is very clear that the question of contributory negligence was properly submitted to the jury. It has been strenuously urged that the rule has no application to the facts of this case. But sound common sense applied to all the evidence clearly shows that under the rules now firmly established the question of contributory negligence was one for the jury. In fact it can hardly be argued with any plausibility that the conduct of the deceased was "marked by gross and inexcusable negligence." The trial justice was therefore right in submitting the question to the jury. The charge was full and clear, and quite as favorable to the defendant as the law requires. No errors prejudicial to the defendant appear in the case. The judgment and order should be affirmed.