NOLAN *v.* NEW YORK CENT. & H. R. R. Co.

*(Supreme Court, General Term, Fifth Department.* October 23, 1891.)

RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.

In an action for personal injuries sustained at a railroad crossing, plaintiff, who was the only witness on his behalf as to the accident, testified that, as he walked towards defendant's tracks, the view to the west was obstructed by a freight-car on a side track; that, after he passed this car, he looked both ways along the track, but saw no train; and that when he reached the further track a train backed down and struck him. The evidence showed that there was a distance of 21 feet between the freight-car and the track on which the accident occurred, and that for this distance the track in the direction from which the train came was unobstructed for 200 feet. Plaintiff was walking, and the train was not moving at more than 5 miles an hour. There was also evidence that plaintiff was intoxicated. *Held,* that a verdict for plaintiff was unwarranted, as the evidence showed that he could not have looked out for the train.

Appeal from circuit court, Monroe county.

Action by John W. Nolan against the New York Central & Hudson River Railroad Company, for personal injuries. Verdict and judgment for plaintiff for $5,000, and defendant appeals. Reversed.

Argued before DWIGHT, P. J., and LEWIS and MACOMBER, JJ.

*Harris & Harris,* for appellant. *Forsyth & Baker,* for respondent.

LEWIS, J. We assume, in disposing of this appeal, that there was sufficient evidence of defendant's negligence to send that question to the jury. But, giving the most favorable construction to the evidence for the plaintiff, we think he failed to prove himself free from negligence contributing to his injury. The accident occurred at or near where the defendant's tracks cross Kent street in the city of Rochester. Kent and Oak streets run parallel with each other, and in a north-westerly and south-easterly direction. Three of the defendant's tracks cross Kent street in an easterly and westerly direction, making a sharp angle with Kent street. The northerly track is elevated over Kent street. The two southerly tracks run substantially or nearly parallel with each other upon a grade of the street. The northerly side of the grade tracks is a branch crossing Kent street, and extends westerly nearly to Oak street, and passes near the abutment of the bridge of the elevated road. The southerly track, and the one on which the plaintiff was injured, crosses Kent street nearly parallel with the middle track, but slightly diverging therefrom to the south. The southerly track divides between Kent and Oak streets at a switch 131 feet west of Kent street, measuring along the track. The two tracks extend westerly from said switch, diverging from each other. The elevated road bridge over Kent street stands on stone abutments 18 feet high. The westerly abutment extends southerly to within a few feet of the northerly rail of the northerly surface track. From the south rail of the north surface track to the north rail of the south track, measuring along the west line of Kent street, is 21 feet. The centers of the north and south branches, measuring along the west line of Kent street, are $31\frac{1}{2}$ feet apart. The north rail of the south track and the south rail of the north track at the west line of Kent street, measuring at right angles, are 9.3 feet apart. The accident happened between 5 and 6 o'clock on the afternoon of the 8th of June, 1886. The day was clear and bright. The plaintiff was residing in the vicinity of the place of the accident, and was familiar with the railroad and its surroundings. He was the

only witness called upon his part who gave an account of the accident. He testified that he approached the place of the accident walking upon the westerly side of Kent street; passed under the railroad bridge; that a freight-car was standing upon the branch track on the westerly side of Kent street; that he was not able to look to the west along the track until he had passed around the end of this freight-car; that he passed around the easterly end of the freight-car, and then stopped and looked to the east and to the west along the track, and did not see or hear an approaching train; that, as he got to the southerly track, an engine backing eastwardly upon the southerly track, and drawing eight or ten freight-cars, "swooped down" upon him, and knocked him down and crushed his leg. After passing the freight-car, and all the way down to the place of the accident, a distance of 21 feet, the plaintiff had an unobstructed view to the west along the railroad tracks on which the train was approaching for a distance of about 200 feet. He was on foot, was able to stop instantly, and a glance to the west would have advised him of the approaching train. There was no evidence that there was anything to attract his attention or to obstruct his view. He did not attempt to testify as to the speed of the train, except to say that it was running fast. Quite a number of witnesses called by the defendant testified that they saw the train approach the place of the accident, and that it was moving not to exceed four or five miles an hour. One of the defendant's witnesses thought it was going as "fast as a horse would trot at a pretty good jog." It did not appear how rapidly the plaintiff was walking. If he was walking two miles an hour, and the train was moving four to six miles an hour, it was plain to be seen by him all the time after he passed the freight-car down to the place of the accident. While he testifies that he looked to the west, and did not see the train, the facts of the case conclusively contradict him. If he looked he must have seen it. A number of witnesses, called by the defendant, testified that they saw the plaintiff walking along the railroad track from Oak street towards Kent street immediately before the accident; that he was very much intoxicated; that he was struck by the tender of the engine before he reached Kent street, and dragged along upon the ground. The defendant's account of the transaction was reasonable and probable, while that of the plaintiff was exceedingly improbable. The facts of the case of *Woodard* v. *Railroad Co.*, reported in 106 N. Y. 369, 13 N. E. Rep. 424, were much stronger for the plaintiff than the case at bar. Woodard approached the crossing, carrying a basket of coal, and was struck by a car kicked down from the west and moving by its own momentum. When he approached to within 10 feet of the track, the car, approaching him at the rate of four miles an hour, could have been seen at a distance of 137 feet. Judge FINCH, in speaking for the court, said: "The accident occurred in the middle of a bright and clear day, when nothing existed to obstruct or hinder the sight, when the injured man was on foot and could have stopped at any instant, and when the merest glance along the switch to the west would have developed the approaching danger. So that the facts make it absolutely certain that Woodard either looked, and, seeing the car coming, undertook to cross in front of it, or did not look when that was his duty, and went blindly upon the track, taking the chances of what might occur." The judgment in favor of the plaintiff was reversed. This court decided in the case of *Mulligan* v. *Railroad Co.*, (Sup.,) 11 N. Y. Supp. 452, that the power and the duty of the court to set aside verdicts which are clearly contrary to the just preponderance of the evidence is one recognized and enjoined by all the authorities. This is a case where the serious and terrible loss sustained by the plaintiff evidently so excited the sympathies of the jury that sentiment, rather than the proven facts, controlled their verdict. We think the verdict is against the great preponderance of the evidence, and that the judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event. All concur.