Adsit agt. Wilson and Chamberlain.

## SUPREME COURT.

ADSIT Appellant agt. WILSON AND CHAMBERLAIN Respondents.

On appeal from a justice's judgment to the County Court, under § 366 of the Code, the latter court have no power or authority to reverse or affirm such judgment on *mere questions of fact* found by the evidence before the justice or a jury.   Consequently this court can not, on appeal from the judgment of the County Court, review such evidence on mere questions of fact.

The law does not regard the judges as possessing any superior qualifications, over jurors, for judging of facts, or the weight or force of evidence of facts. It is a familiar and safe principle, that facts are to be tried by jury, and that the mere facts of a cause when once fully and fairly tried, are not to be reviewed.   And this rule applies to the finding of facts by any tribunal having jurisdiction, such as referees, arbitrators and justices of the peace, &c.

The words "of fact" added to this section, in 1851, do not increase the powers of the County Courts over trials of fact in Justices' Courts.   The term "error of fact," does not refer to any error or mistake of the jury in finding the facts; it has a well settled legal meaning, which is quite different.

Where testimony is offered, the relevancy of which can not be seen, and where it is not clearly on a cross-examination, it is the duty of the party who offers the evidence, when objected to, to point out some legitimate purpose for which he offers it, or the court may properly reject it.

*Chautauque General Term, September* 1852.   *Present,* TAG-GART, *P. J.,* MARVIN, HOYT and MULLETT, *Justices.   Appeal from a judgment of the County Court of Cattaraugus county, reversing a judgment of a Justice's Court.* The action before the justice was commenced the 16th day of December 1849, and was tried by the justice and a jury, February 5th, 1850.   The plaintiff complained of the defendants for taking and converting to their own use a horse of the plaintiff of the value of $75, and claimed damages to $100.   The defendants, by their answer, denied " each and every allegation contained in the complaint," and for further answer set up a judgment, recovered by Wilson, one of the defendants, in a Justice's Court, against one John Adsit, an execution thereon, the delivery of the execution to Chamberlain, the other defendant, as a constable, to be executed, and justified the taking and sale of the horse by virtue of the judgment and execution.   Upon the trial before the justice, the

plaintiff proved, in substance, the taking of the horse by Chamberlain from the plaintiff's stable, by the direction of Wilson, on the last day of November 1849; the sale of the horse by the constable, and that the plaintiff forbade the taking and sale of the horse.  It appeared that the horse was brought to the plaintiff's by John Adsit, who resided about twenty miles off, the day before he was taken by the constable.  The important question of fact to be tried was, whether the horse belonged to John Adsit, so as to be subject to the execution against him, or whether he belonged to the  plaintiff.  Much evidence was given upon this question, by both parties, upon which the jury found a verdict for the plaintiff for $38 damages, for which the justice gave judgment for the plaintiff, with his costs.  Upon an appeal to the County Court, all the proceedings and testimony had before the justice, as well as his judgment, were returned, and the County Court reversed the judgment, upon certain legal propositions decided by the county judge, and which are referred to in the opinion of this court.  The judgment of the County Court is now brought here by appeal.

S. S. SPRINGER, *for Appellant.*

W. H. WOOD, *for Respondent*

By the Court, MULLETT, Justice.—This is an appeal from a judgment of a County Court, reversing a judgment of a court of a justice of the peace, on appeal.  The County Court, as appears by the judge's written opinion, reversed the judgment of the Justice's Court, for certain alleged errors in law, clearly specified in the opinion; but one of the reasons, if not the principal reason, urged in this court, for sustaining the judgment of reversal is, that the verdict in the Justice's Court was against the evidence, and the County Court should have reversed, or was right in reversing the judgment of the Justice's Court for that reason. That the 366th section of the Code of 1851, authorizes the County Courts to reverse the judgments of courts of justices of the peace, for *errors of fact* as well as errors of law.  As by the Code of procedure, the justice on an appeal to a County Court, is required to make a return to the appellate court of the testimony, proceed-

ings and judgment before him, and the County Court, upon the hearing of the appeal, is directed to give judgment according to the justice of the case, without regard to technical errors and defects which do not affect the merits; and is authorized to affirm or reverse the judgment of the court below, in whole or in part, and as to any or all the parties, and for error of *law or fact,* it seems to be supposed that an appeal from a judgment of a County Court, affirming or reversing a judgment of a Justice's Court, necessarily brings to this court, for examination and review, all the testimony taken before the justice, and the conclusions of fact founded on that testimony, as the subject matter brought before the County Court for review, and therefore embraced by the judgment of that court, whether that court really made any decision on that subject or not. This could not have been the intention of the commissioners of the Code, or of the legislature. They could not have contemplated a system which would require the questions of fact, tried in all the Justices' Courts in the state, to be critically examined and reviewed upon the evidence, by the County Courts, and then again reëxamined on appeal to this court. Besides the expense, delay and inconvenience of such a system, it would be useless in contemplation of law. The law does not regard the judges as possessing any superior qualification over jurors, for judging of facts, or the weight or force of evidence of facts. It is a safe and favorite principle of our jurisprudence, that facts are to be tried by jury, and that the mere facts of a cause, when once fully and fairly tried, are not to be reviewed. This rule applies to the finding of facts by any tribunal or body having jurisdiction to try the facts of a case, such as referees, arbitrators, justices of the peace, when they try causes without a jury, &c. It is the legal duty of the courts to see that issues of fact in their courts, are fully and fairly tried; and in courts of record, if the verdict or finding of the facts, is so clearly without evidence, or against the evidence, as to satisfy the court that there is strong probable ground to believe that the merits have not been fully and fairly discussed, or that the jury have given their verdict under a misconception of the law, or under any improper extraneous influence, and that great injustice has been done, the court will set aside the verdict, not for the pur-

pose of assuming the trial of the facts themselves, but for the purpose of granting a new trial by another jury, or by other triors, under circumstances more favorable to a just result. This proceeding is well known in the practice of courts of record, as the granting of new trials on the merits. When there is evidence on both sides and the correctness of the verdict, or finding of the facts is merely doubtful; in short, when the only complaint against the finding of the facts is that the triors did not correctly weigh or appreciate the evidence, the courts have no authority to interfere with the result (*Gra. Pr. 2d ed.* 631 to 633, and the cases there cited; *Gra. on New Trials,* and the cases there cited).

This doctrine was applied by the Supreme Court to the review of justices' judgments on certiorari under a former system which authorized the Supreme Court, in such cases, to " give judgment according as the very right of the case should appear, without regarding any imperfections, omissions or defects in the proceedings in the court below, in mere matters of form " (1 *R. L.* 397, § 17), as appears by a uniform series of adjudged cases, among which are those of Brown agt. Wilde (12 *John. R.* 455); Trowbridge agt. Baker (1 *Cow. R.* 254); Stryker agt. Bergen (15 *Wend.* 490).

When power was given to the Court of Common Pleas to review the judgments of Justices' Courts, on certiorari, and on such review to give judgment in the case, " as the right of the matter might appear, without regarding technical omissions, imperfections or defects in the proceeding before the justice, which did not affect the merits " (2 *R. S.* 257, § 181); the same rule was applied to them, and the Supreme Court would reverse a judgment of the Common Pleas given in disregard of it (Noyes agt. Hewitt, 18 *Wend.* 141; Oakley agt. Van Horn, 21 *id.* 305, 307; Whitney agt. Crim, 1 *Hill,* 61; Brum agt. Tarpenny, 3 *id.* 75; McDonald agt. Edgerton, 5 *Barb. S. C. Rep.* 560). A similar power is now vested in the county courts, on appeals from the judgments of courts of justices of the peace, under that part of the 366th section of the Code of 1851, which directs the county courts in such cases, upon the hearing of the appeal, to give judgment according to the justice of the case, without regard to

technical errors and defects which do not affect the merits, and we have no doubt that its exercise by the county courts, should be governed by those prudential and salutary rules of jurisprudence which have uniformly controlled courts of record in the examination of verdicts of juries on the merits, and has so long and so steadily guided the Supreme Court and Common Pleas in affirming or reversing the judgment of Justices' Courts on the facts. To this extent, and no further, do we feel ourselves authorized to proceed in reviewing the judgments of county courts, affirming or reversing judgments of courts of justices of the peace on the merits.

The words " *of fact,*" added by the Code of 1851 to the 317th section of the Code of 1848, do not increase the powers of the county courts over trials of fact in courts of justices of the peace. The term " error of fact," does not refer to any error or mistake of the jury in finding the facts; they were never the subject of a writ of error. The term *error of fact* has a distinct and well settled legal meaning. When applied to proceedings in error, in courts of record, it means such facts as affect the regularity and validity of the proceedings on the record and still do not appear on it, such as the death, infancy, or coverture of one of the parties. The record assumes or purports to be between parties legally competent to prosecute and defend the action, but still does not say so. If these assumptions are false, the proceedings are irregular. But as these errors are not committed by the court, there is no impropriety in calling upon the court to correct them; therefore writs of error for errors of fact, may be, and usually are, made returnable before the court which rendered the judgment, or in which the record is. These errors not appearing upon the face of the record are brought before the court by an assignment alleging them, which is therefore called an assignment of errors *of fact.* The defendant in error may deny the facts assigned for error which makes an issue of fact to be tried by a jury. If the facts are found for the plaintiff in error, and the court give judgment for the plaintiff, the judgment is that the erroneous judgment be *revoked,* not *reversed,* which is the language of the judgment of reversal by an appellate tribunal for errors of law. It is clear that these errors do not impeach the

judgment of the court, upon the merits, as they appear upon the record, but only show that the proceedings are not applicable to the persons sought to be charged by them.   Nor have they any resemblance to those irregularities or improprieties which relate to the proceedings before the jury.   For the correction of those irregularities, a special application must be made to the court, and it is a general rule that a writ of error will not lie to correct those irregularities which, by the practice of the courts, are usually corrected on a motion.   But courts of justices of the peace did not possess the power to set aside verdicts rendered in their courts for misconduct committed by the jury, nor could the justice return such misconduct to a certiorari, as a part of the proceedings before *him*.   The former Supreme Court, therefore, on certiorari to a Justice's Court, allowed such irregularities to be assigned as errors of fact, and as such took cognizance of them (15 *John. Rep.* 87; 1 *Cow. Rep.* 238; 4 *id.* 17).   The statute of 1830, which authorized the removal of justices judgments to the Common Pleas, by certiorari, dispensed with the assignment and joinder in error, and directed the cause to be heard upon the papers filed with the clerk (2 *R. S.* 257, § 180).   After this, it was supposed by a part of the profession, at least, and some of the courts, that the statute had totally abolished the use of an assignment of errors in all causes removed by certiorari from Justices' Courts.   When in the year 1835 the Supreme Court decided that the statute did not apply to an assignment of errors of fact (*ex parte* H. J. Williams vs. Albany Mayor's Court, 12 *Wend.* 266).

That the above are the " *errors of fact* " alluded to by the legislature in the 366th section of the Code, is apparent from some of the subsequent provisions of that section.   The legislature had repealed all former statutes providing for the review of judgments rendered by courts of justices of the peace, and declared that the only mode of reviewing such judgments, should be by appeal to the County Court, as therein prescribed.   The appeal is to be taken by affidavit, which shall state the substance of the testimony and proceedings before the court below, and the grounds upon which the appeal is founded.   To this affidavit the respondent may make a counter affidavit.   Both of the affi-

davits are to be served on the justice, who is to make a return to the appellate court, of the testimony, proceedings and judgment. This return would bring before the County Court all the proceedings, decisions and errors of the Justice's Court, affecting the merits of the cause, or the subject matter of the action and the rights of the parties, as distinguished from those which affect the mere proceedings. And as to those irregularities which relate to the mere proceedings which were not before the justice, and which the justice could not return, the affidavit and counter affidavit would be equivalent to an assignment and joinder in error *of fact*. When the appeal is founded on these, the County Court may try it upon affidavits or on the examination of witnesses (*Code of* 1851, § 366). These provisions make out a full and complete system for the review of judgments and proceedings of courts of justices of the peace, by county courts, both as to errors of law and fact, without giving them any arbitrary or illegal control over a full and fair trial of the facts in the way pointed out by law.

But in the case under consideration, the County Court did not assume to reverse the judgment for any error of fact, in the proceedings. The county judge in his opinion clearly states the grounds upon which the judgment of the Justice's Court was reversed, which were, 1st. That the justice erred in excluding testimony offered by the defendants on the trial; and, 2d. That it appeared from the evidence that the plaintiff's pretended title to the horse in question was void as against the defendants, they being the creditors of John Adsit, under the statute relating to fraudulent conveyances, &c. (2 *R. S.* 136, § 5). To understand these points it will be necessary to recur to some of the evidence given before the justice. The plaintiff, to establish his title to the horse, gave evidence tending to prove that early in the spring of 1849, John Adsit owned two asses, a male and a female, which the witnesses called a "*Jack*" and a "*Gill*." That in June, John Adsit, being about to leave home on business, authorized Hiram Adsit to sell the animals to the plaintiff. That on the 12th of June, Hiram, as the agent of John Adsit, did sell the asses to the plaintiff for two notes for $60 each, payable to John Adsit, one in a year and the other in eighteen months, and turned the

Adsit agt. Wilson and Chamberlain.

Jack out to the plaintiff at the time. That the Jack continued in the possession of the plaintiff until taken out to be traded for the horse, and that the notes were delivered by Hiram to John in August, which was the first time he saw John after the receipt of the notes. That about the last of July, John Adsit, at the request of the plaintiff, exchanged the Jack with one Kinner for the horse in question and a cow. That the exchange was made by John in the plaintiff's name; and that John received the horse and cow for the plaintiff and as his property. That John took the horse to his father's, where he resided himself, upon an understanding with the plaintiff that he should have the horse when he wanted him. That under these circumstances John kept the horse and occasionally used him, until he brought him to the plaintiff's stable, the day before he was taken by the defendants. On testifying as a witness for the plaintiff, to the trade with Kinner for the horse and cow, John Adsit said that he traded the cow which he had of Kinner to one Worthington for another jackass, and sold the Jack to Mr. Bradley for a stove, wagon, wood and lumber, called $80. The defendant then asked the witness " what other property besides the cow, he let *Worthington* have for the Jack, which he had of him?" This question was objected to by the plaintiff, and the objection sustained by the justice; but the witness answered that he was to let Worthington have the lumber that he got for the *Gill*. This is the improper rejection of evidence which forms one of the grounds upon which the county judge reversed the judgment of the Justice's Court, and it appears to me that it is not solid enough to add much support to that judgment. The defendants did not state what they desired or expected to prove by the answer to their question. They did not show then, nor does it appear now, how any answer which could be given to the inquiry could be material to the question on trial. The answer could have no direct relevancy to the subject matter of the issue. The horse in question was not obtained from Worthington, nor did the Jack which Worthington let John have, enter into the value of the horse or have any connection with the property of the horse. If John had answered that besides the cow he let Worthington have some other property of the plaintiff, it would only

have tended to show that the plaintiff owned the Jack which was obtained from Worthington, but would not have weakened the evidence tending to show that he owned the horse in question, which was obtained from Mr. Kinner. If John had answered that besides the cow, he let Worthington have the balance in his own property, it would only have tended to show John's interest in the Jack, which he had of Worthington, but would not have shown his interest in the horse in question, nor weaken the plaintiff's title to the horse. Under such circumstances, where the relevancy of the testimony can not be seen, and where it is not clearly on a cross-examination, it is the duty of the party who offers the evidence, which is objected to, to point out some legitimate purpose for which he offers it, or the court may reject it. Besides, in this case, the witness, notwithstanding the objection, went on and answered the question, to which the defendants made no objection or further inquiry, but abandoned the subject and proceeded with the trial. Under such circumstances the defendants can not revive the subject in an appellate court.

*The second* ground on which the Judge of the County Court puts the judgment reversing the judgment of the Justice's Court, is, to use his own language, "That as there was not at the time of the pretended purchase of the Jack by the plaintiff, and afterwards, an actual and continued change of possession from John Adsit to the plaintiff, the purchase was therefore fraudulent and void as to creditors." The judge then refers to the 5th section of the statute, cites several adjudged cases, giving it as his opinion that a plaintiff must in a case like this, show not only a good and valuable consideration paid, or that an honest debt existed, in the payment of which the property was received, but also show facts and circumstances tending to prove an absence of an intent to defraud creditors, and that the sale was made in good faith, that the possession of the property, by the vendor, must be explained; and finally comes to the conclusion that "in this case there was not any proof tending to show good faith or the absence of fraudulent intent, and hence there was no evidence to sustain the verdict, and that the Justice's Court would have been warranted in refusing to submit the cause to the jury, and in non suiting the plaintiff.

Adsit agt. Wilson and Chamberlain.

Before adopting these conclusions of the county judge, or examining all the decisions referred to by him, it may be proper for us to inquire what was the subject to which his reasoning applied, and which constituted the burden of his second point. His honor, the county judge, says it was the fraudulent purchase of the Jack, by the plaintiff of John Adsit, which was declared by the statute to be fraudulent and void, as against his creditors, because possession was not delivered. This might have been a very important matter if the creditors of John Adsit had claimed the jackass instead of the horse; but as it is, it is not easy to perceive how the statute can be applied to the case under consideration. There was no proof or pretence that John Adsit ever sold or pretended to sell the horse to the plaintiff. Therefore there was no transaction to which the statute could be applied. The substance of the statute is that a sale of personal property, without changing the possession, shall be presumed to be fraudulent as against the creditors of *the vendor*. It considers *the sale* as a sham sale to keep *the property* from the creditors of the vendor, and void as against them. In this case the plaintiff's vendor of the horse in question, if he had one, was Kinner, and his creditors do not complain. The county judge mistook the whole nature of the defence. The defence proceeded on the supposition that the sale of the *jackass* by John Adsit to the plaintiff was a sham sale, made to keep that property from John's creditors, and that the subsequent disposition of the property by him, showed his continued ownership, and proved that the use of the plaintiff's name was only a disguise. In short, that the purchaser of the horse from Kinner, was really made with John's property, and for his benefit. This aspect of the case, if established, would have been quite as fatal to the plaintiff's action as the one now assumed; but it would present a different question from the one decided by the county judge, and one to which the statute referred to, had no application. This question was fully and fairly presented to the jury upon proof on both sides and was decided against the defendants, and the County Court had no power to interfere with that verdict, or to reverse the judgment of the Justice's Court founded on it. The judgment of the County Court must, therefore, be reversed, and that of the justice affirmed.