CHARLES F. SMITH, Appellant, *v.* THE ÆTNA LIFE INSURANCE COMPANY, Respondent.

It is the duty of the General Term of the Supreme Court to set aside a verdict which is against the clear weight of evidence. Where a judgment has been reversed and new trial granted by that court upon the facts, this court occupies the same position, and the facts are open for review.

A concealment of material facts, called for by questions in an application for a policy of life insurance, is as fatal to the contract as a denial.

Defendant issued a policy upon an application wherein the applicant stated that the insured was in good health, and usually enjoyed good health; that no circumstance which might make the risk more than usually hazardous was concealed or withheld. To a question, whether the insured had had certain diseases, among them disease of the heart, palpitation, spitting of blood, etc., the answer was " see surgeon's report; " it was also stated that the insured had no physician. The examining physician, in answer to a question whether the insured had cough, occasional or habitual, or expectoration, or occasional or uniform difficulty in breathing, answered " no cough ; walking fast up stairs or up hill produces difficulty in breathing." In fact, the insured had raised blood from two to two and a half years prior to and down to his death ; a physician had been consulted and prescribed therefor. He had failed in health prior to the application ; he died three months after the issuing of the policy, of *pleura pneumonia.* The referee rendered judgment against defendant. *Held,* there was a fraudulent concealment and misrepresentation of material facts, and an order of the General Term setting aside the judgment was proper.

(Argued April 3, 1872 ; decided April 16, 1872.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, setting aside a judgment in favor of plaintiff, entered upon the report of a referee.    (Reported below, 5 Lans., 545.)

Action upon a policy of insurance issued by defendant for $2,000, upon the life of Jonathan C. Smith, father of plaintiff.

The material facts are set forth in the opinion.

*Lyman Tremain* for the appellant.    If the order of Supreme Court was correct it should have been only on payment of costs ; this should be corrected here.    (Graham's Practice, [2d ed.] 635 ; 12 Mod., 370 ; 1 Burr., 12, 393 ; 3 Cow.,

342; 1 Graham & Waterman on New Trials, 603, and cases cited.) In case the Supreme Court or other subordinate court overrules a settled rule of practice, this affords good ground for reversal of its order by an appellate tribunal. (*Wills* v. *Lane*, 15 Wend., 99, 100, 106; *Forsha* v. *Drost*, 4 Bosw., 664.) The statement that the insured was in good health was true. (*Peacock* v. *Ins. Co.*, 20 N. Y., 293.) The finding of a referee upon conflicting evidence cannot be set aside any more than the verdict of a jury, and is equally conclusive. (*Davis* v. *Allen*, 3 N. Y., 168; *Bearss* v. *Copley*, 10 id., 93; 15 Wend., 87.) If there was a conflict of evidence the court will not grant a new trial on the ground that the verdict is against evidence, even though they deem the conclusion reached by the jury erroneous. (33 Barb., 127; 36 id., 23; 6 Cow., 682; 7 Barb., 271; 7 How. Pr., 64; 27 Barb., 528; 5 Sandf., 180; 27 Barb., 337; 3 E. D. Smith, 98; 5 Barb., 337; 7 How., 251; 29 Barb., 218; 33 id., 347; 24 How., 58; 29 Barb., 226; 27 id., 540; 29 id., 491; 33 id., 347; 2 Hill, 528.) Where a question of *fraud* has been decided by a jury, after hearing evidence on both sides, there is no rule of law allowing the court to interfere with or disturb their verdict. (1 G. & W. on New T., 353; 3 J. R., 180; 10 id., 101; 37 Barb., 520.) The finding of a judge or jury cannot be reversed when the evidence is conflicting. The facts must show passion, prejudice or inattention to their duty. (25 How., 427; 29 id., 155; 3 J. R., 170; 3 Hill, 251; 2 id., 578; 3 Bosw., 520.)

*Rollin Tracy* for the respondent. If the applicant consciously withholds any material fact, the contract is vitiated in its origin, and he cannot recover on a contract which is the offspring of his own fraudulent concealment or misrepresentation. (See Phillips on insurance, § 535, etc., *et seq.*, *Sturner* v. *The Great Western Ins. Co.*, 40 How. Pr. R., 423.) The employment of and consultation with Dr. Hoxie made him the family physician of insured. (*Monk* v. *A. M. Life Ins. Co.*, 6 Rob., 455.) The judgment being reversed upon

*questions of fact,* this court has the power to examine the *facts,* and the whole case is properly presented to this court for review. (See Code, § 272, sub., 7; *Peterson* v. *Rawson,* 34 N. Y., 370; *Beebe* v. *Mead,* 33 id., 587.)

PECKHAM, J.   The action was upon a policy of insurance applied for by the plaintiff on the 19th day of January, 1867, upon the life of his father, J. C. Smith; policy issued February 11th, 1867, and the insured died May 11th, same year.

In the application for insurance, plaintiff stated that his father "is now in good health, of sound body and mind, and usually enjoys good health,   *   *   *   and that I have not concealed, withheld or misrepresented any material circumstance in relation to the past or present state of his health or condition which may render an assurance of his life more than usually hazardous, or with which the directors of said company ought to be made acquainted."   The questions and answers were signed by the applicant with his name and with that of the insured, and it was agreed that if the answers were in any respect false or fraudulent the policy would be void.   Among the questions were these: "Has the party ever had any of the following diseases (naming some twenty in number, among which are asthma, disease of the heart, palpitation and spitting of blood)?"   The answer is, "See surgeon's report."   Another question: "Name and residence of the family physician of the party, or of one whom the party has usually employed or consulted?"   Answer: "Had no physician."   Another: "Has the party, or has he had, an habitual cough?"   Answer: "No."

The examining physician, in answer to the question "whether the party has ever suffered from disease of any kind," said "no;" also, in answer "whether cough, occasional or habitual, or expectoration, or occasional or uniform difficulty in breathing, or palpitation," the physician said: "No cough; walking fast up stairs or up hill produces difficulty in breathing; no palpitation."

The referee found generally for the plaintiff, and that

deceased died of pleura-pneumonia, and he refused to find that deceased was afflicted with spitting of blood at time of or prior to the application.

The General Term granted a new trial on questions of fact, and hence they are open to review in this court. (Code, § 268.)

Then, was the deceased in " good health " when this application was made, or did he then " usually enjoy good health ? " Had he had spitting of blood, asthma or disease of the heart ? These were all material questions, and their concealment was just as fatal to this contract as their denial. I think it is established beyond doubt or contradiction that he had spitting of blood for months prior to this application. I am satisfied he had disease of the heart for many months prior to his death; but a question was made among the doctors upon that point, and whether he died of pneumonia or of disease of the heart, and I do not intend to examine that point now, if at all.

As to spitting blood, his physician, Dr. Hoxie, testified to his raising blood from two to two and a half years prior to his death. The doctor called it a passive hemorrhage of the lungs. He spoke to the doctor about it. " He would cough, and when he raised, it was partially mixed with blood; this continued to the time of his death. It would and did have a tendency to weaken him. Some one and a half or two years before he died he was at our house frequently, and requested me to prescribe for this difficulty, and I did so. He told me that expectoration of blood had continued two and a half years before he died; a rusty-colored, bloody expectoration." This witness visited him in his last illness, a very few days prior to his death.

John Aikin : Lived within one and one-fourth of a mile of him ; saw him once a week; never saw him spit blood, but heard of it. Witness noticed a general failing of his health in June, 1866; he looked sick.

Eli Smith, brother-in-law of deceased, saw him spit blood in December, 1866.

Wayne Gallup : Noticed failing of deceased for some time before he died, particularly in the last fall and winter ; talked with him in the winter, and he said he had been failing for some time, and had been raising blood ; noticed his failing two or three months before that.

Eli Smith, son of deceased, testified to his spitting blood " the summer before his death ; saw him quite often a year or two before his death ; he stayed with witness then ; it con_ tinued while he lived."

This is all the testimony as to spitting of blood, except plaintiff's proof that he spit blood in his last illness. There is not a word of contradiction. The plaintiff, the son of the deceased, was examined, but was asked nothing on the subject. Had he not known of the blood-spitting, it is clear he would have so stated. The plaintiff knew that the defendant regarded this as a fact material to the contract. The question was distinctly put to the plaintiff, and plainly evaded. The matter was referred to the examining doctor, who knew nothing upon the subject, as he had never attended the deceased. He falsely stated he had had no physician, when he had been doctoring for shortness of breath and this blood-spitting for months. This was told to prevent inquiry of his doctor. Can any one pretend that the company did not regard this fact as material to this risk, to this contract ? This, then, was a palpable, fraudulent concealment of a material fact ; it was also a plain untruth in stating that he was then in good health. He repeatedly spoke of his health as failing ; so he appeared and so continued till he died. The son, the plaintiff, was obviously the manager in this business. He signed the name of the deceased, though with his consent.

In my judgment here is a plain fraud clearly proved. Unless a different rule is to be adopted in reference to an insurance company than prevails among others, this fraudulent attempt at speculation should not succeed. Such frauds, if successful, always beget others ; they have followers. Besides, they confound all calculation of insurance companies for sound insurance, thus necessarily increasing their rates

and compelling honest applicants to pay higher premiums by reason of such dishonest practices.

The action of the Supreme Court was plainly right. It is their duty to set aside a verdict which is against the clear weight of the evidence; not merely as this is, against the evidence. In deciding a case upon the facts, this court occupies the same position which that court held upon this subject.

Justice would be promoted if the Supreme Court should more frequently exercise its unquestioned right of reviewing verdicts upon the facts.

The order appealed from is affirmed, and judgment absolute ordered for the defendant.

All concur, except Allen and Rapallo, JJ., not voting.

Judgment accordingly.