### IN THE

# APPELLATE DIVISION,

## December, 1896.*

Vol. 12
App. Div.
12      1
15ap446
12      1
24ap271
25ap424
25ap629
12      1
155    499

12      1
84    1378

MARY CURRY, Respondent, v. GERSHOM WIBORN and JOHN W. WIBORN, Appellants.

*Service of a summons only — the subject of the suit cannot be proved by parol — reversal on the facts.*

· Where an action has never proceeded any further than the service of the summons therein, it is not competent to prove the subject-matter thereof by parol evidence, in order to establish the defense, interposed in a subsequent action between the same parties, of the pendency of a former action.

The Appellate Division has power to reverse, upon the facts, a judgment entered upon a verdict, and while this power should be exercised with great caution, and only in cases where it is manifest that, unless exercised, a miscarriage of justice will result, nevertheless the court should not, in a proper case, shrink from its exercise.

APPEAL by the defendants, Gershom Wiborn and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 18th day of December, 1895, upon the verdict of a jury rendered after a trial at the Monroe Circuit; also from an order entered in said clerk's office on the 18th day of December, 1895, denying the defendants' motion for a new trial made upon the minutes, and also from an order made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 13th day of August, 1896, denying the defendants' motion for a new trial upon the ground of newly-discovered evidence.

---

* The other cases of this term will be found in volume 11 App. Div.— [REP.

*John Van Voorhis,* for the appellants.

*J. Stuart Page,* for the respondent.

ADAMS, J.:

The complaint in this action charges the defendants with having committed an assault and battery upon the plaintiff at the house of the defendant Gershom Wiborn, in the city of Rochester, on the evening of April 11, 1894.

The plaintiff, it seems, was a domestic in the employ of the defendant Gershom Wiborn, who was a man of some means, having a family consisting of a wife, two sons and a daughter.

At the time of the occurrence which gave rise to this action both of the sons were attending school at or near Philadelphia, and the daughter was, on this particular evening, acting as an usher at a woman's rights meeting which was being held at a place in the city called the " Rink."

Gershom Wiborn and his wife were married in 1869, and it is conceded that for a number of years prior to the alleged assault they had lived unhappily together.

Upon the night in question Mrs. Wiborn informed her husband that she was going down to the rink after her daughter, and upon receiving this information the latter sent word to his brother, the defendant John W. Wiborn, to come and spend the evening with him. The invitation was accepted by John, and the two brothers occupied the dining room engaged in social intercourse, it being claimed upon the part of the plaintiff that the same was enlivened to some extent by the presence of a bottle of liquor, although this claim is flatly denied by both of the defendants.

It further appears that Mrs. Wiborn's statement to her husband that she was going to the rink was untrue, and that instead of carrying out her intention, as expressed, she secreted herself in a hallway leading from the dining room, for the purpose of listening to and overhearing the conversation between the two brothers. In the course of the evening something attracted Gershom Wiborn's attention to the door in the hall and he arose to close it, when he discovered his wife's presence. It does not appear that he recognized her at first (his sight being impaired by an affection of the eyes of long standing), and she testifies that he struck at her, where-

upon she called to the plaintiff who was upstairs, and the latter, in response to such summons, ran down and caught Mr. Wiborn by both of his wrists.  He made some resistance to this attack, and, in doing so, the evidence tends to show that he knocked the plaintiff with his elbows and kicked her.

Up to this point, in the account furnished of the fracas, there is but little, if any, difference in the versions of the several witnesses, but the evidence of what immediately followed is more or less conflicting.  Upon the one hand it is claimed that both defendants assaulted Mrs. Wiborn and the plaintiff, while upon the other it is insisted that immediately upon discovering the situation of affairs, John W. Wiborn started to leave the house, and that, while in the act of leaving, his brother tried to keep his wife and the plaintiff from attacking him, it being claimed that he was especially *persona non grata* to one or both of them.

This much, however, does appear without contradiction, that a disgraceful family quarrel took place, during which blows and kicks were exchanged, a rocker was wrenched off from a chair, some pieces of crockery were thrown about the room, and when the combatants had exhausted their belligerent propensities it was discovered that the plaintiff had received the injuries of which she now complains.  She says that she was made so ill by the assault that in consequence thereof she was obliged to go away for a week in order to recover her health; but she admits that at the expiration of that period of time she resumed her duties and continued in the service of the family for a month or two thereafter, when she was discharged, and upon the day of her discharge she caused both of the defendants to be arrested upon a criminal warrant for the assault in question.

The defendants were tried in the Police Court of the city of Rochester, and both of them were acquitted; and, about the same time, the plaintiff also commenced a civil action against the defendant Gershom Wiborn in the County Court of Monroe county, but proceeded no farther than to serve a summons therein, and in September following the present action was commenced.

The issues joined herein were tried at the Monroe Circuit in November, 1895, and the jury rendered a verdict in favor of the plaintiff for $900.  A motion for a new trial upon the minutes was

thereupon made, which was denied; and, from the order denying the same, as well as from the judgment entered upon the verdict, this appeal was taken. Another motion was also made at Special Term for a new trial upon the ground of newly-discovered evidence, which was likewise denied, and the record before us brings up for review the order made upon that motion.

The answer of the defendant Gershom Wiborn sets up the pendency of a former action for the same cause, and upon the trial his counsel offered to prove by the plaintiff and her attorney of record that the action which was commenced in the County Court by the service of a summons had never been discontinued, and it was for the precise cause of action embraced in her complaint herein. This offer was rejected, to which ruling an exception was duly taken, and it is now contended that it was error to exclude the evidence thus offered. It was held in *Phelps* v. *Gee* (29 Hun, 202) that where, as in this case, no complaint was ever served, the subject of the controversy could not be proven by parol evidence, for the reason that, by simply serving a summons, the plaintiff in an action was under no legal obligation to follow it up with a complaint setting forth any particular claim or demand. He might, if he so elected, count upon something entirely different from that which was originally intended, or, perhaps, allege a cause of action which was wholly fictitious. The same doctrine was applied in *Hoag* v. *Weston* (10 Civ. Proc. Rep. 92), and is apparently sanctioned by the Court of Appeals in *Gardner* v. *Clark* (21 N. Y. 399), and we, therefore, feel ourselves constrained to adopt it in the present emergency.

Several other exceptions to the rejection and admission of evidence are pressed upon our attention with some earnestness by the defendants' counsel, but we deem it unnecessary to give them any consideration, inasmuch as we have reached the conclusion that, for other reasons, a new trial should be granted in this case.

A careful reading of the record before us impresses us with the idea that the verdict herein was influenced by some consideration of sympathy or prejudice, which should not have found its way into the jury box, for we are quite inclined to the opinion that such verdict was against the decided weight of evidence upon the main issue; and that the amount thereof was greatly in excess of what it should

have been, even if it be conceded that the plaintiff was entitled to recover anything, is a fact which must be apparent to any unbiased mind. In saying this we do not lose sight of the idea that in this, as well as in all similar cases, the jury, speaking in general terms, are to be regarded as the sole judges of the facts in issue; nor are we intending to establish a rule which shall be deemed a precedent for substituting the court in the place of the jury upon the trial of such issues; but we are simply performing a duty which rests upon us of correcting manifest error in the attempted administration of justice. This duty is one, we admit, which should be exercised with great caution, and only in cases where it is perfectly plain that, unless exercised, there will be a miscarriage of justice. But it is, nevertheless, one from the performance of which courts should not shrink when satisfied that the circumstances of any particular case demand their interference with a verdict.

It was remarked by Judge PECKHAM, in the case of *Smith* v. *Ætna Life Insurance Co.* (49 N. Y. 211–216), that "Justice would be promoted if the Supreme Court should more frequently exercise its unquestioned right of reviewing verdicts upon the facts."

And in *Adsit* v. *Wilson* (7 How. Pr. 64–66), MULLETT, J., makes use of this significant language: " It is the legal duty of the courts to see that issues of fact in their courts are fully and fairly tried; and in courts of record, if the verdict or finding of the facts is so clearly without evidence, or against the evidence, as to satisfy the court that there is strong probable ground to believe that the merits have not been fully and fairly discussed, or that the jury have given their verdict under a misconception of the law, or under any improper extraneous influence, and that great injustice has been done, the court will set aside the verdict, not for the purpose of assuming the trial of the facts themselves, but for the purpose of granting a new trial by another jury or by other triors, under circumstances more favorable to a just result."

This language was subsequently quoted with approval by DANIELS, P. J., in the case of *Townsend Mfg. Co.* v. *Foster* (51 Barb. 346, 350), decided by the General Term in the eighth district, and was also adopted by General Term of the late fifth department, for its guidance in granting a new trial in *Mulligan* v. *N. Y. C. & H. R. R. R. Co.* (11 N. Y. Supp. 452).

We think the rule, recognized in these and other authorities which might be cited, a salutary one, and that this is a case in which it may be applied with perfect safety and great propriety. We, therefore, conclude that the judgment and order appealed from should be reversed and a new trial granted. This disposition of the case renders it unnecessary to consider the appeal from the order denying the motion for a new trial upon the ground of newly-discovered evidence, and that appeal is, therefore, dismissed, without costs to either party.

Judgment and order reversed, and a new trial granted upon the payment by the appellants of the costs of the first trial, the costs of this appeal to abide the event of the action.

All concurred.

Judgment and order reversed, and a new trial granted upon payment by the defendants of the costs of the first trial, the costs of this appeal to abide the event of the action.