(25 App. Div. 420.)

## HEAPHY v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department.   February 6, 1898.)

ACTION ON POLICY—EVIDENCE.

In an action upon a life insurance policy, it was shown that the application contained false statements, but plaintiff claimed that the signature of the insured thereto was forged. The beneficiary testified that she was present when the application was filled out, but did not see insured sign it. The physician testified that the insured signed in his presence. Experts declared the signature to be genuine. The disputed signature was exactly similar to a signature to a part of the application which was admitted to be genuine, except that the genuine signature was "Chas. D. H.," and the disputed one had been "C. D. H.," but a letter "h" had been inserted after the "C." *Held*, that the evidence was not sufficient to support the charge of forgery, and a verdict for the beneficiary was therefore against the evidence.

Appeal from special term, Monroe county.

Action by Elizabeth Heaphy against the Metropolitan Life Insurance Company to recover the value of a life insurance policy.   From a judgment in favor of the plaintiff, and from an order denying a motion for a new trial, defendant appeals.   Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Eugene Van Voorhis, for appellant.
Patrick McIntyre, for respondent.

ADAMS, J.   The plaintiff seeks, through the medium of this action, to recover of the defendant the amount claimed to be due upon a policy of insurance issued to her by the defendant upon the life of her son, Charles D. Heaphy.   The contract of insurance was based upon a written application consisting of four subdivisions, and designated, severally, A, B, C, and D.   Subdivision A contained certain questions relating to the age, occupation, residence, etc., of the insured, the answers to which were written out by the defendant's agent, and signed by the insured.   Subdivision C contained numerous questions relating to the physical condition of the insured, as well as to that of his parents and other members of his family. It is claimed that, in compliance with the directions accompanying the application, the answers to these questions were filled out by the physician of the company, and signed by the insured, and that it was thereupon expressly stipulated that they should form the basis and become a part of the contract of insurance, and that any false statements therein contained should vitiate the policy issued thereon. Upon the trial it was conceded that the insured signed subdivision A of the application, but it was claimed that what purported to be his signature to subdivision C was a forgery.   In this latter subdivision it was stated that one of the applicant's brothers and two of his sisters had died of pneumonia, and that none of his brothers or sisters had ever been afflicted with consumption.   It appeared, however, by evidence which was undisputed, that these representations were untrue, and that the insured's brother and one of his sis-

ters did die of consumption, of which disease the insured himself died within five months after the policy was issued.    Thus it was made to appear beyond all controversy that, if the signature to subdivision C of the application was the genuine signature of Charles D. Heaphy, the policy in suit was vitiated in consequence of the misstatements contained in such subdivision; and the sole issue of fact which was submitted to the jury upon the trial related to the genuineness of such signature.    Upon the issue thus presented, the plaintiff was sworn as a witness in her own behalf, and testified that she was present when her son was examined by the defendant's physician; that such examination was exceedingly perfunctory, and consisted simply of sounding the chest; that no questions were asked; that no information whatever was imparted by the applicant respecting his physical condition, or that of any of his ancestors or other relatives; and that no paper was signed by him in her presence. This evidence was flatly contradicted by the defendant's medical examiner, Dr. Edgar H. Earl, who testified that he made the medical examination of the insured at his residence, that the answers to the various questions were furnished by the insured in response to inquiries made of him, that such answers were inserted in subdivision C by the witness, that the insured thereupon signed his name to such subdivision, and that the witness then signed subdivision D, and mailed the application to Dr. Willard, the medical director of the defendant, who resided in the city of New York.    These two are the only living witnesses who were present when the examination referred to took place, and, as we have seen, their evidence is contradictory in every essential particular.    The plaintiff is, of course, directly interested in the result of this action.    Her evidence was uncorroborated by that of any other witness, and it is by no means satisfactory.    Moreover, it was detailed in such a manner as to convey the impression that her recollection of what occurred at the time to which her evidence relates is not entitled to the utmost reliance. Nevertheless, if there were no other evidence in the case than that of Dr. Earl, we should feel constrained, under well-established rules, to say that this was simply another instance where a sharp issue of fact had been determined by a jury, and that their verdict must be accepted, even though it did not command our approval.    Fortunately, however, there is other evidence available, which to our minds is so convincing in its character that we do not feel at liberty to disregard it.    In the first place, an expert in handwriting, of conceded experience and ability, was called in behalf of the defendant, who had carefully compared the signature to subdivision C with the one to subdivision A, the latter of which, as has been stated, was admitted to be genuine, and he expressed the opinion that the two signatures were written by the same person.    This species of evidence, it is true, would not prove altogether convincing, standing by itself; and we should not, if such were the case, deem it of sufficient weight to authorize us to interfere with the verdict.    But upon the argument the original application was submitted to the court for personal examination, and we have availed ourselves of the opportunity thus afforded to examine and compare the two signatures

with great care, and such examination and comparison have produced upon our mind the conviction that beyond all peradventure the two signatures were written by one and the same person, and that, consequently, if the signature to subdivision A was written by Charles D. Heaphy, he must also have signed his name to subdivision C. Although the two signatures were written at different times, and one of them in ink, while the other was written with a blue pencil, their general characteristics are the same, and they are so marked and well defined in both signatures that we think it would have been impossible for the most expert forger to have thus imitated them. Moreover, there is a peculiarity about the signature to subdivision C which plainly establishes its genuineness, 'independently of its general characteristics, and that peculiarity is this: The signature to subdivision A is written "Chas. D. Heaphy," whereas the one to subdivision C was evidently written "C. D. Heaphy," and then, after the first initial, a small "h" was inserted, with the obvious design of conforming to the requirement of the defendant that the full name of the applicant should appear. Had this signature been forged by an expert of sufficient skill to imitate the handwriting of the insured as closely as this does, he would most certainly have made his signature correspond exactly with the one he was attempting to imitate, instead of using the initials of the insured, and subsequently making the addition just adverted to. If we entertained the slightest doubt as to our duty to this case, we might cite other circumstances of more or less weight which tend to strengthen the views we have expressed; but, so well satisfied are we that injustice has been done the defendant by a verdict which was obviously rendered under the stress of some extraneous influence, that we are content to rest our decision that such verdict should be set aside as against the weight of evidence upon the knowledge gained by a personal inspection of the signature which is claimed to have been fabricated. It is not an agreeable duty for an appellate court to interfere with the verdict of a jury, and it is one, as we have heretofore had occasion to say, which ought always to be exercised with the greatest caution. Curry v. Wiborn, 12 App. Div. 1, 4 N. Y. Supp. 178. But human nature is imperfect at the best, and, when it is made to appear as plainly as it does here that judgment has yielded to either sympathy or prejudice, a responsibility is cast upon the court of review which it is not at liberty to evade. Smith v. Insurance Co., 49 N. Y. 211–216; Adsit v. Wilson, 7 How. Prac. 64–66; Manufacturing Co. v. Foster, 51 Barb. 346; Mulligan v. Railroad Co. (Sup.) 11 N. Y. Supp. 452; Belch v. Railroad Co., 90 Hun, 477, 36 N. Y. Supp. 56; Bosko v. Railroad Co., 91 Hun, 320, 36 N. Y. Supp. 261.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.