decided therein (as in Barber v. Kendall, 158 N. Y. 401, 53 N. E. 1), is not the case. That accounting could legally involve the doings of the defendant as executor only.

Interlocutory judgment for an accounting.

(55 App. Div. 489.)

### BERKERY v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. CROSSING ACCIDENT—NEGLIGENCE.
Evidence that an engine, after crossing a sidewalk a short distance, was suddenly reversed, and moved rapidly forward without any signal, though plaintiff was seen by the fireman on the track, warrants a finding of negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.
Whether a person seeing that an engine had crossed the street to the eastward, and was six or eight feet to the east of the sidewalk, and was still moving to the east when she was a few steps from the track, was guilty of contributory negligence in going on the track without looking again for the engine, or should have heard the engine reverse, is a question for the jury; it, while making a loud noise from escaping steam, having suddenly reversed, and moved rapidly forward, striking her while on the track.

McLennan, J., dissenting.

Appeal from trial term, Wyoming county.

Action by Nellie Berkery against the Erie Railroad Company. From a judgment on a verdict for plaintiff, and from an order denying motion on the minutes for a new trial, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

James H. Stevens, for appellant.
M. L. Coleman, for respondent.

LAUGHLIN, J. On the 6th day of December, 1897, the plaintiff, while passing along the westerly sidewalk of Main street, and over the northerly track of defendant's road, in the village of Silversprings, was struck and injured by a locomotive moving westerly. The recovery in this action was for the damages caused by the injuries thus inflicted. The only question presented by the appeal which merits extended consideration is whether the evidence fairly required the submission to the jury of the question as to whether plaintiff was free from contributory negligence, and is sufficient to sustain the verdict in her favor upon that issue.

Main street runs north and south, is 52 feet wide, and has a board walk upon either side. The two main east and west bound tracks of the defendant, and one siding southerly thereof, cross the street at grade, in a northwesterly and southeasterly direction, at an angle of 24° and 28′. Train No. 95, known as the "way freight," arrived at Silversprings at 10:45 a. m., being 50 minutes late. According to the testimony of the trainmen, it consisted of eleven freight cars, five loaded and six empty, besides the engine, tender, and caboose, in

the following order from the front of the train: The locomotive and.
tender, four empty cars, two loaded cars, two empty cars, three load-
ed cars, followed by the caboose. The station was on the northerly
side of the track, about 100 feet west of Main street. The train
came in from the east on the northerly or west-bound track, and
stopped before reaching the station or crossing Main street. The
trainmen testified that the four cars next the tender were to be cut
out of the train at this station, and placed and left on the salt-works
siding, and the car next the caboose was likewise to be cut out, and
placed and left on the Silver Lake Railway siding. These sidings
were both connected with the track upon which the train came in by
a siding which commenced in the easterly sidewalk of Main street,
near where the engine first came to a stop, and ran easterly along
the northerly side of the northerly track, intersecting the Silver
Lake Railway siding about 250 feet east of Main street, and the salt-
works siding 150 or 200 feet beyond, according to the map. The
coupling pin between the fourth and fifth cars from the tender was
drawn, thus cutting off the four cars to be switched to the salt works.
The engine then moved forward with these cars sufficiently to clear
the switch located near the easterly line of Main street. The switch
was turned, and the engine proceeded to back the cars onto the
northerly siding.

The foregoing facts are practically uncontroverted, with the ex-
ception that the testimony of some of plaintiff's witnesses would
seem to indicate that there was a car or two next the tender which
it was not intended to leave upon the salt-works siding; but at this
point a serious conflict arises in the evidence. Plaintiff contends,.
and her contention is sustained by the testimony of three disinter-
ested witnesses, in addition to that given by herself, that, as the
engine started back to throw these four or more cars upon the north-
erly siding, it suddenly reversed, before fully passing over the cross-
ing, started forward at a speed of four or five miles an hour, and
struck plaintiff, who was unaware of its change of direction. Ac-
cording to some of plaintiff's witnesses, the engine shunted some cars
in upon the northerly siding just before reversing, and one or two
cars remained attached to the engine as it moved forward after re-
versing. On the other hand, the testimony of defendant's employés
upon the train, which was corroborated by other disinterested tes-
timony, is to the effect that the four cars had been switched upon
the salt-works siding, and the engine had returned and coupled onto
the remaining seven cars of the train, and was proceeding forward
with them, having left the caboose where it first stopped on account
of having to switch off the rear car, when plaintiff walked upon the
track, and was thus struck. If the accident occurred while the train
approached the crossing in the manner testified to by the witnesses
called for the defendant, plaintiff should have discovered the train,
and the court properly instructed the jury that, if they believed that
evidence, she was guilty of contributory negligence, and could not
recover.

Plaintiff lived about a quarter of a mile south of the station, and.
had been familiar with the crossing, passing over it frequently, for

a period of about six years. The day was foggy and misty, and it was snowing a little. Plaintiff was desirous of taking the Rochester & Pittsburg train, which was due to leave defendant's station in Silversprings at 10:55 a. m. She was walking, and came up Orchard street, which intersects Main street about 100 feet south of the crossing. From Orchard street she turned upon the westerly sidewalk of Main street, and passed on towards the crossing. Her evidence tended to show that when in front of or a little nearer the track than the Currier House, which, according to the map, would be within 75 feet of the southerly siding, she first saw the train coming from the east towards the station; that it had not yet reached the crossing; that the engine passed over the street and stopped, or nearly stopped, with cars obstructing the crossing, and started to back up, about the time she reached the southerly siding; that she then stopped, and looked to see which way the train was going, and, as it started east slowly, she started, and walked along, and was about to the southerly main or east-bound track, when the engine passed her; that she then looked to see if it was coming again, and, after the engine got past the sidewalk and she saw it still moving eastward, she proceeded to cross at a good gait; that the last she saw of the engine before stepping upon the west-bound track it was six or eight feet east of the sidewalk, still moving eastward, and that at this time she was between the rails of the east-bound track; that steam was escaping from the engine, making a sizzing, roaring noise; that she listened, and heard no other noise or signal, and was not aware that the engine had reversed until it struck her, just as she was about to step over the last rail of the west-bound track. We have not overlooked the fact that on direct examination the plaintiff, in giving an affirmative answer to a leading question, appears to have testified that the time when she last looked was just as she was stepping upon the west-bound track, and that it was at that time that the engine was six or eight feet east of the sidewalk; but, upon cross and redirect examination, her attention was again drawn to this matter, and she testified that this had reference to the time when she was on the east-bound track. Whether the plaintiff was justified in proceeding across the west-bound track without looking again towards the engine, which was moving to the east when she was within a few steps of the track, was, we think, under the circumstances, a question of fact for the jury, and they were justified in concluding that a person of ordinary prudence would have been justified in the assumption that the engine would not, without notice or warning, suddenly reverse, and move forward so rapidly as to thus overtake a pedestrian crossing the track.

If the jury found, as is indicated by their verdict, that the accident occurred at the time the engine was engaged in switching the four cars, as claimed by plaintiff, and not when it was coming forward with the remainder of the train, as claimed by defendant, then defendant's negligence was clearly established. The evidence warranted the finding not only that the engine was suddenly reversed and moved forward rapidly, but that this was done without the giving of any signal by bell, whistle, or otherwise, and when plaintiff

was upon, or just stepping upon, the track a rod or two ahead. The engineer was looking the other way, and did not see plaintiff, but the jury would have been justified in finding that the fireman saw her, and did nothing to avoid the accident. Whether the engine was 6 or 8 feet east of the sidewalk when plaintiff was about to step upon the west-bound track, within 10 or 12 feet, measured along the line of the walk, of the point where she was struck, or when she was upon the east-bound track, and between 20 and 30 feet of the point where she met with the accident, it was physically possible for this light passenger engine to be suddenly reversed and started forward with sufficient rapidity to overtake her before she cleared the west-bound track, depending, of course, upon the speed with which the engine proceeded easterly, the distance it proceeded easterly, and the suddenness of the reversal and starting forward. Disinterested witnesses say that they observed that the engine made this movement before the accident, and had their minds drawn to it and fixed upon it, expecting that an accident would be inevitable. Some witnesses say the engine was reversed on the street at the point where wagons cross the track, and when plaintiff was upon the west-bound track. It is, of course, a matter of common observation that, when an engine is suddenly reversed, the wheels are likely to slide, and it makes considerable noise; but whether, in the exercise of ordinary care, plaintiff could and should have observed such noise was, in view of the noise made by the escaping steam and under all the circumstances, a question of fact for the jury.

We are of opinion, therefore, that the evidence justified the submission of the case to the jury, and is sufficient to sustain their verdict. The judgment and order appealed from should be affirmed, with costs. All concur, except McLENNAN, J., who dissents in an opinion.

McLENNAN, J. (dissenting). I think the verdict of the jury in this case is so decidedly against the weight of evidence that it was error for the learned trial court to deny defendant's motion for a new trial, made upon that ground, and that for such error the judgment and order appealed from should be reversed, and a new trial granted. The evidence descriptive of the locus in quo is not conflicting, and is stated with substantial accuracy in the prevailing opinion. There was such proof of defendant's negligence as to require its submission to the jury. The verdict cannot be said to be excessive, and there is no question raised by any exception taken to the rulings of the court in receiving or rejecting evidence, or to the charge or refusal to charge, which requires discussion, only leaving for examination upon this appeal the one question: Has the plaintiff successfully met the burden imposed upon her of establishing, by a fair preponderance of evidence, freedom from contributory negligence?

At the time of the accident the plaintiff was 24 years of age, was a strong, healthy, active woman, in the full possession of all her faculties. She had resided in the village of Silversprings continuously for six years; was perfectly familiar with Main street, the manner in which it was crossed by defendant's tracks, and the way in which

they were used by the defendant in the conduct of its business, which had been substantially the same during such period of six years. The plaintiff had crossed the tracks at the place of the accident frequently, on an average of at least once a day, for six years. The accident occurred about 11 o'clock in the forenoon of the 6th day of December, 1897. There was no rain, snow, or wind storm at the time, and there was no obstruction to her view; absolutely nothing to prevent her from seeing the engine or train with which she came in collision, or any other engine, car, or train in the vicinity. The entire situation, at the place of the accident and for a considerable distance upon either side of the sidewalk, was in plain view, and the exact conditions existing at the time were discernible by the ordinary, or even casual, use of her eyes, and in fact were seen by her.

Briefly stated, the plaintiff's claim is, and she testified, that as she was on the sidewalk on the west side of Main street, walking north, intending to go to the defendant's depot, she was intercepted by a freight train, composed of an engine and some freight cars, which was being backed easterly across the sidewalk in front of her at the rate of four miles an hour. She stopped between the rails of the first or southerly main track, and waited for the engine to pass. When it had cleared the sidewalk, and got to a point "six or eight feet [east] from the sidewalk," and while it was "still going east," she started "walking right along a good gait" to cross the track on which the engine was, and before she got across the engine stopped, reversed, and suddenly came back and struck her, and caused the injury of which she complains. There can be no mistake about the way the plaintiff claims the accident occurred. After having stated substantially as above upon her direct examination, and after being cross-examined, she stated upon her redirect examination as follows:

"Q. Can you tell me exactly where you were at the time you last looked towards this engine before you were struck? A. Just as I was going over the main track. Q. Do you know how far these main tracks are apart? A. No, sir; I do not. Q. Do you mean just as you came over it? Had you crossed one rail or both rails of the main track? A. I had crossed one rail, and was just to cross the other rail. Q. Of the east-bound track? A. Yes, sir; the first main track. Q. And what was the engine doing at that time? A. It was using steam,—going eastward towards Castile. Q. Moving away from where you stood? A. Yes, sir. Q. And then how did you walk as to speed? I mean from that point on? A. I walked right along,—a good gait, I should think. Q. Do you know how far these two main tracks are apart? A. No, sir; I don't know exactly."

It is conceded that the distance between the nearest rails of the main tracks at the point in question is eight feet. The claim is that, while the plaintiff was crossing the last rail of the first main track, she stopped to permit the engine to clear the sidewalk in front of her. It did so, going to the east of the sidewalk six or eight feet, at the rate of four miles an hour. After it had gone that distance, and while it was still going east, she started at a good gait to cross. Then the engine stopped, reversed, came back upon the track, and struck her before she could make the crossing.

We think the statement involves a physical impossibility, and is therefore not true, and that the testimony of three or any other num-

67 N.Y.S.—13

ber of witnesses does not add to its probative force. It is suggested that perchance the plaintiff and her witnesses are mistaken as to distances; that she was further away—perhaps 30 feet—from the track on which the engine was when she started to cross than is indicated by her; or that the engine was possibly further east from the sidewalk. If the evidence be thus interpreted, then, as matter of law, the plaintiff was guilty of contributory negligence in attempting to cross the track before observing whether or not it was safe for her to do so. The engine was in full view. There was absolutely no obstruction. It is not claimed that the plaintiff's attention was distracted. She saw the engine, saw its movements, and, if she was any substantial distance further away from the track than she states when she attempted to cross, by the vigilant use of her senses she could have discovered that the engine had reversed, and she was chargeable with negligence in not observing such fact.

It is suggested that steam escaping from the engine might somewhat have hidden it from view. The plaintiff testified on direct examination upon that subject as follows:

"Q. Did you notice whether any steam was coming from it [the engine]? A. Yes, sir; there was steam coming from it. Q. And where did the steam go? A. It seemed to go to the ground and envelop the engine. Q. You may describe how this steam appeared after it escaped from the engine. What did it do? A. Well, I couldn't say any more than it just came down after it left the engine."

Under the circumstances, it is hardly credible that the escaping steam was sufficient to hide the engine from view, an object at least 12 feet high and 30 feet in length, and if the witness saw the steam escaping from the engine, as she testified she did, it pretty conclusively indicates that she, at least, knew its location. But it is unnecessary to speculate, because the plaintiff testified positively that she saw the engine when it was six or eight feet east of the sidewalk, and that it was still moving eastward. According to the statement of the plaintiff, she had about the same distance to travel in order to cross the track that the engine had to traverse in order to reach her, and, in addition, the engine, going at a four-mile gait, would have to stop, reverse, and then make the distance.

The evidence, when considered together, conclusively shows that the accident did not happen in the manner testified to by the plaintiff and her witnesses at all, but that it happened while the engine and cars were moving westward towards the sidewalk upon which the plaintiff was, and while she was attempting to cross in front of the engine. Of course, such a statement of the transaction by the plaintiff would defeat a recovery, because, the engine being in plain sight, it would have been negligence on her part to attempt to cross in front of it. That it occurred in that manner and at that time was testified to by every one of the employés in charge of the train, five in number, and five other credible, disinterested witnesses, who, so far as appears, were not, and had no reason to be, unfriendly to the plaintiff. Not only do the witnesses for the defendant so testify, but the circumstances and many facts which are conceded point to the truth of their version of the transaction. Considering the num-

ber of witnesses,—ten in all,—who testified in support of the defendant's contention, and the number who gave evidence tending to support the plaintiff's theory,—three besides herself,—but especially because the version of the transaction, as testified to by the plaintiff and her witnesses, involves, as we think, a physical impossibility, or, at least, a situation so extraordinary and unusual as to challenge the belief of the most credulous, it should be held that the verdict in this case, rendered solely upon such evidence, is against the weight of evidence.

The case is interesting because it involves a new and novel proposition, and one which, if tenable, will insure a recovery in case of injury at railroad crossings in a large variety of cases which have hitherto not troubled the courts, provided only that witnesses can be found, one, two, or three, who will testify that the injured party stood beside a railroad track at a street crossing, waiting for a railroad train or a trolley car, going at the rate of four miles an hour, to pass; that the person thus waited until the train or car going at that rate of speed had passed, and reached a point six, eight, or ten feet distant; that such person then attempted to make the crossing, relying upon the fact that the train or car was constantly moving farther away; that the train or car then stopped, reversed, retraversed the track, and caught and injured the pedestrian.

The defendant's engineer, who, upon his cross-examination, was examined as an expert by the plaintiff's attorney upon that subject, testified that the locomotive in question was incapable of performing such antics. He also testified that the engine was not a light switching engine, but a freight engine, and that it could not be moved or manipulated as easily or quickly as could a heavier engine with smaller wheels. The testimony of this witness is uncontradicted, save as the plaintiff and her witnesses state the fact to be, in substance, that the engine was six, eight, or ten feet east of the sidewalk, moving still further away, at the rate of four miles an hour, and that instantly it was back on the sidewalk, going in an opposite direction, at substantially the same rate of speed. As we have seen, ten witnesses called by the defendant, who were in the immediate vicinity, testified that the engine, to which at least two cars were attached, according to the plaintiff's testimony, did not perform in such manner.

We think no sufficient reason has been suggested why such a proposition should receive the assent of this court. If 3 witnesses, or 30, should testify that the Empire State Express made similar movements, only multiplying the rate of speed and the distances in this case by 15, would any sane person believe that a pedestrian was caught and run over by the read end of such express train? Yet the proposition would be no more absurd than is plaintiff's contention. If a train 8 feet from a given point, going at the rate of 4 miles an hour, can be stopped, reversed, and run back to such point while a person traveling at a good gait is going 8, 10, or 12 feet, then a train going at the rate of 60 miles an hour can be stopped, reversed, and run back to a crossing while a person going at "a good gait" is walking a distance of 120 or 150 feet to the same point. Both prop-

ositions are equally absurd. The rule is well settled that the mere fact that the witnesses called by one party to an action to prove a material fact outnumber those called by the other does not, of itself, constitute a preponderance of evidence which requires the setting aside of a verdict as against the weight of evidence. Schick v. Railroad Co. (City Ct. Brook.) 10 N. Y. Supp. 528; Latham v. Delaney (Super. N. Y.) 15 N. Y. Supp. 146; Volk v. Livingston (Sup.) 1 , N. Y. Supp. 211. It is equally well settled that where the evidence relied upon to support a verdict is in conflict with well-known physical and scientific facts, or involves an unusual and extraordinary state of facts which of themselves challenge belief, and are not in accord with our learning and experience, such verdict should be set aside as against the weight of evidence. Hudson v. Railroad Co., 145 N. Y. 408–412, 40 N. E. 8. The rule applies with especial force to the case at bar. The fact, standing alone, that the defendant's version of the transaction is reasonable, and is supported by the testimony of ten witnesses, and that the plaintiff's version is only supported by the testimony of three in addition to that of herself, under the authorities would not be sufficient to justify an appellate court in reversing the order appealed from; but when we have, in addition, the fact that the plaintiff's version is unprecedented, is unlike the facts of any other reported case, and practically, at least, involves an impossibility, there should be no hesitancy in declaring that the verdict is against the weight of evidence.

We recognize the correctness of the rule which was laid down in Baird v. Mayor, etc., 96 N. Y. 567, and which was approved by this court in Allen v. Henry, 16 App. Div. 557, 44 N. Y. Supp. 956, that, before a judgment can be reversed upon the facts of a case, it must appear that the proof so clearly preponderated in favor of a contrary result to the one reached as to make it reasonably certain that the trial court erred in its conclusion.

In the case of Curry v. Wiborn, 12 App. Div. 1, 42 N. Y. Supp. 178, the court, after announcing that the judgment and order appealed from in that case should be reversed because the verdict was against the weight of evidence, at page 5 said:

"In saying this, we do not lose sight of the idea that in this as well as in all similar cases the jury, speaking in general terms, are to be regarded as the sole judges of the facts in issue; nor are we intending to establish a rule which shall be deemed a precedent for substituting the court in the place of the jury upon the trial of such issues; but we are simply performing a duty which rests upon us of correcting manifest error in the attempted administration of justice. This duty is one, we admit, which should be exercised with great caution, and only in cases where it is perfectly plain that, unless exercised, there will be a miscarriage of justice. But it is, nevertheless, one from the performance of which courts should not shrink when satisfied that the circumstances of any particular case demand their interference with a verdict."

It was said by Judge Peckham in Smith v. Insurance Co., 49 N. Y. 211–216, that "justice would be promoted if the supreme court should more frequently exercise its unquestioned right of reviewing verdicts upon the facts."

In Adsit v. Wilson, 7 How. Prac. 64–66, the court said:

"It is the legal duty of courts to see that issues of fact in their courts are fully and fairly tried; and in courts of record, if the verdict or finding of the

facts is so clearly without evidence, or against the evidence, as to satisfy the court that there is strong probable ground to believe that the merits have not been fully and fairly discussed, or that the jury have given their verdict upon a misconception of the law, or under any improper extraneous influence, and that great injustice has been done, the court will set aside the verdict, not for the purpose of assuming the trial of the facts themselves, but for the purpose of granting a new trial by another jury or by other triors, under circumstances more favorable to a just result."

This language was approved by the court in Manufacturing Co. v. Foster, 51 Barb. 346, 350, and in Mulligan v. Railroad Co. (Sup.) 11 N. Y. Supp. 452.

I do not believe that any useful purpose is served by an appellate court in following the rule sometimes adopted, and upholding a verdict of a jury rendered upon an alleged state of facts which the court feels perfectly sure did not exist, simply because witnesses have so testified. Such a course promotes carelessness, if not perjury, on the part of witnesses, encourages the bringing of actions which have no merit, and gives meaning and force to the expression frequently heard: "The case is without merit, but testimony will raise a question of fact, and as the defendant is a corporation a recovery will be had if the court does not interfere."

The conclusion is reached that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.